A05A2336. CLARK v. THE STATE.
(629 SE2d 103)

BARNES, Judge.

Robert Lewis Clark appeals his kidnapping conviction, contending that the trial court erred in failing to grant his motion for directed verdict because of a fatal variance between the indictment and the proof. He also asserts that the trial court denied him his right to represent himself at trial because he needed hearing transcripts and legal materials; failed to enforce witness subpoenas; erred in allowing prejudicial hearsay testimony; and erred in allowing the State to comment on the witnesses' credibility. Finally, he contends that the court's kidnapping charge was argumentative and improper. For the reasons that follow, we affirm.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840 (1) (607 SE2d 565) (2005). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

---

Viewed in that light, the evidence at trial established that after Clark lived with the victim for a short time, he began to slap her, pull her hair, and threaten her. When he threatened to kill her and their unborn baby, she moved out. Clark called her at her Waffle House job every night begging her to return. On October 2, 2003, Clark drove to the Waffle House parking lot, where the victim was standing and talking to two young men. He asked her what she was doing there and who she was talking to, then grabbed her by her upper arm and pushed her into his car. The victim testified that she struggled with him, but was afraid of Clark, who was much stronger and could badly hurt her and the baby. She also testified that she did not try to escape after the car began moving because she had been having problems with her pregnancy and was worried about harming the baby. Clark took her against her will out of Carroll County and into Haralson County, where a separate indictment was later issued against Clark for several acts of violence against the victim.[1]

Clark was indicted for kidnapping, and insisted on representing himself, although the trial court appointed counsel to assist him. We note that during this difficult trial in which Clark represented himself, the trial court was judicious and even-tempered throughout, despite Clark's often combative behavior. A jury convicted him and the court sentenced him to serve 16 years in confinement. Clark is represented by counsel on appeal.

1. Clark argues that the trial court erred in denying his motion for a directed verdict because of a fatal variance between the allegations in the indictment and the proof presented at trial. The indictment alleged that the victim's name was her proper first name but that her surname was Clark. At trial, she testified that her surname was not Clark.

We find no merit in this enumeration. First, Clark failed to raise this issue either by demurrer or by a motion in arrest of judgment. A motion for a directed verdict is not the proper vehicle to contest the indictment's legal sufficiency. *Parks v. State*, 246 Ga. App. 888, 889 (1) (543 SE2d 39) (2000); *Carr v. State*, 184 Ga. App. 889, 890 (363 SE2d 319) (1987). Clark never raised the issue until this appeal, although the State pointed out the variance at trial. Thus, it is waived. Id.

Second, even if the issue had been raised properly, Clark's argument would fail.

"The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the

---

[1] During the trial, the parties and witnesses carefully avoided any reference to the Haralson County offenses.

accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." (Citations omitted.) *Berger v. United States*, 295 U. S. 78, 82 (55 SC 629, 79 LE 1314) [(1935)].

*DePalma v. State*, 225 Ga. 465, 469-470 (169 SE2d 801) (1969). The determination of whether a variance in the indictment and the proof is fatal depends on whether the variance affects the substantial rights of the accused. *Denson v. State*, 212 Ga. App. 883, 884 (2) (443 SE2d 300) (1994).

If the victim named in the indictment and proven at trial are two different people, then a fatal variance has occurred, but a fatal variance generally has not occurred if the two names refer to the same individual, "such as where a mere misnomer is involved." *Harrison v. State*, 192 Ga. App. 690, 691 (1) (385 SE2d 774) (1989). Here, the indictment alleged that Clark kidnapped the victim from a specific place on a specific date. He admitted at trial that he drove off with the victim on that day, although he asserted she went with him voluntarily. The two eyewitnesses to the kidnapping referred to the victim, who also testified about her ordeal. No one indicated any confusion at trial regarding the victim's identity, and thus the variance was not of a character that could have misled Clark during trial. *Harris v. State*, 197 Ga. App. 695, 695-696 (399 SE2d 284) (1990).

2. Clark insisted throughout trial that he wanted to represent himself, as was his fundamental right as long as he made the decision voluntarily and intelligently. *Clarke v. Zant*, 247 Ga. 194, 195 (275 SE2d 49) (1981). It is clear from the record in this case that Clark knowingly and intelligently waived his right to counsel, and he has not raised this issue on appeal. See *Harris v. State*, 269 Ga. 731, 733 (505 SE2d 467) (1998); *Brown v. State*, 244 Ga. App. 206, 208 (1) (535 SE2d 281) (2000).

Instead, Clark contends that he was denied his right to represent himself effectively, because (a) he was not allowed to bring his legal materials to trial and he lacked access to a law library or adequate research materials; (b) he was denied copies of transcripts from previous hearings; and (c) he was not allowed to subpoena witnesses. None of these contentions is supported by the record.

(a) The record is replete with discussions and testimony regarding Clark's complaint that he was not allowed access to a law library, and the trial court gave him ample opportunities to correct any alleged deprivations. Before the first aborted trial, Clark announced ready and did not claim he was denied legal materials. The parties picked a jury, but before it was sworn in, the State moved for a

continuance because someone had died, which the trial court granted. Two weeks later, at a pretrial hearing in May 2004 regarding Clark's desire to represent himself at trial, the trial court and the State explained to Clark the charges against him, his possible defenses, that the rules of evidence and procedure would apply to him as they would to an attorney, and that he could not claim ineffective assistance of counsel if he represented himself. While Clark initially refused to speak, he eventually complained in the hearing that he still had no access to a law library.

The hearing was continued to the next day, and a deputy sheriff assigned to the jail testified that Clark requested access to a law library three months earlier, in February 2004. While the county did not have a law library, the deputy researched and delivered the materials Clark asked for up to March 14, 2004, after which Clark made no more requests. He said if Clark gave him a list, he would retrieve more documents, but Clark responded that it was too late. Clark asserted at the hearing that he was ready for trial, as he had been for the first trial.

The next week, the court called the case for trial. Both the State and Clark raised concerns about Clark's witness list, subpoenas, and access to a law library. The State sought to obtain a waiver of Clark's law library claim as Clark also stated that he did not want a continuance. At that point, the trial court concluded that Clark did not appear to be mentally stable or mentally capable of conducting a trial. The court then concluded the hearing and referred Clark for a forensic evaluation to determine his competency to stand trial and to represent himself.

Apparently, the evaluator concluded that Clark was competent on both accounts,[2] because three months later, the court called the case for trial, with Clark proceeding pro se. Before the jury was selected, Clark said he needed his legal materials from the Cobb County jail. When the trial court asked if he would waive his speedy trial demand so it could address this claim, Clark announced he was ready for trial and did not want a continuance. The public defender assigned to assist Clark with legal questions testified that he provided Code sections, horn books on criminal procedure and evidence, and case law to Clark before trial, in response to his request for all information about kidnapping. The lawyer said he tried to provide Clark with everything he asked for, going so far as to buy Clark's clothes for trial out of his own pocket. After Clark was rude to his staff on the phone, the lawyer told him to send his requests for legal

---

[2] Clark has raised no issue on appeal regarding his competency to stand trial or to represent himself.

materials in writing, and Clark made no more contact with him after May 26, 2004, more than two months earlier.

Even if Clark had not waived his right to raise this argument by announcing ready for trial, the record shows that he was given ample opportunity to obtain any documents he claimed were missing. He also had ample assistance in his attempts to research legal issues. It is clear from the record that Clark did not want an attorney to represent or assist him, and thus he is bound by the same procedural requirements that a lawyer would be.

Finally, regarding the issue of access to legal material, the United States Supreme Court held that

> an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. . . . [M]eaningful access to the courts is the touchstone, and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

(Citations and punctuation omitted.) *Lewis v. Casey*, 518 U. S. 343, 351 (116 SC 2174, 135 LE2d 606) (1996). Further, the right of "access to courts"

> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

(Emphasis omitted.) Id. at 355. Clark has not demonstrated that he needed the materials to attack his sentence or to challenge the conditions of his confinement, and further has not even demonstrated that the alleged shortcomings of which he complains hindered his efforts to present his defense. Accordingly, we find no error.

(b) Clark contends he was effectively denied the right to represent himself because he was not given copies of the transcripts of previous hearings. He filed a written "Motion for Discovery" in open court on March 15, 2004, seeking among other things, the court record from each previous court appearance, and raised the issue the day before trial. The State responded that the only transcript it had

was from the probable cause hearing, which it delivered to Clark. The State had no transcripts from the other two hearings, and noted that Clark could have asked for them to be transcribed but had not done so. After the jury was empaneled, the trial court told Clark that while he was responsible for requesting the transcripts as he was representing himself, the court called the court reporters who took down the previous two hearings. While one transcript would take two to three weeks to transcribe, the other might be ready very soon, and that transcript was given to Clark the next day.

Clark failed to follow proper procedure to obtain the two untranscribed hearings, and thus we find no error. While the State failed to deliver the transcript it had in hand until the day before trial, Clark does not explain how he was prejudiced by its late delivery and makes no attempt to show how earlier delivery could have affected his defense. Finally, he waived this issue by announcing ready for trial.

> [A] defendant is obliged to request a continuance to cure any prejudice which may have resulted from the State's failure to comply with the requirements of the reciprocal discovery act. Under the circumstances, we hold that [Clark] waived his right to assert error on appeal by his knowing failure to seek a continuance.

(Citation and punctuation omitted.) *Ruff v. State*, 266 Ga. App. 694, 695 (598 SE2d 362) (2004). Thus we find no error.

(c) Clark asserts that he was denied the opportunity to effectively represent himself because his subpoenas were not delivered to his witnesses. The record shows that Clark was responsible for any failure in this regard. Three months before his trial, the court asked why Clark wanted to subpoena ten or twelve law enforcement officers. Clark responded that they were "part of this crime now, now that they have disallowed me the ability to represent myself by not getting me the legal information that I need. And — and I have talked to these people, all of them, about this case, so they are a part of this case." While they were not witnesses to the crime, Clark wanted them to testify that he told them he did not commit the crime and thus they would supply "prior consistent statements." The trial court held that such testimony would be inadmissible self-serving testimony, and that the only witnesses allowed were those who could testify about the event for which he was on trial. When the court asked Clark what the deputy would testify to, Clark said, "That's for us to get on the stand and tell. . . . I believe that that would be damaging to my case right now to . . . disclose that type of information . . . in front of the district attorney." When asked what the next officer had to do with the case, he replied, "I'm not going to sit here and argue with you what

they have to do with it. I just told you that they're valid in this — in this case. They all are." He again asserted that these witnesses were part of the case, and that he hoped to show that they had knowledge that he did not do this crime. The court ruled that neither these witnesses nor the witnesses Clark wanted to call about his lack of access to the library would be allowed to testify.

Before trial began, the public defender appointed to sit with Clark during trial testified that he asked a deputy sheriff to contact Clark regarding his subpoenas, but she called back to say Clark was very rude and did not want her help. The deputy testified that Clark told her he did not need the public defender's assistance serving or obtaining subpoenas.

When asked if he were ready for trial, Clark complained that he had had no access to subpoenas, although he was not asking for a continuance and he had not given the State or the sheriff his witnesses' addresses. The trial court offered to have the sheriff's office try to deliver the subpoenas. The State noted that the witnesses from Cobb were not going to come because they had not had 24 hours notice or personal service, and moved in limine to prevent Clark from calling witnesses, including deputy sheriffs and attorneys formerly appointed to represent Clark, purely to repeat statements he made in self-interest. The court asked Clark to make a proffer for the record regarding a deputy sheriff, to which he responded, "I'm not going to tell you why his testimony is relevant in this case. That would disclose my defense for this case to the district attorney." When asked for a proffer regarding two public defenders, he said they had not obtained specific records he had asked them to obtain. The judge responded that this issue was not relevant, and when asked about another deputy, Clark said, "I'm not giving you nothing [sic]."

Later in the trial, after four State's witnesses testified, the trial court sent the jury out and explained it had faxed some subpoenas to the Cobb County jail, but those witnesses were insisting on personal service and 24 hours notice. Clark was again offered the opportunity to make a proffer so the court could determine whether it should delay the trial to obtain proper service on these witnesses, and Clark responded that they were responsible for his access to legal material. A deputy who worked for court services testified that two of the subpoenas had the same address, which corresponded to a vacant mobile home that was for sale. The trial court then held that his previous ruling regarding these subpoenas applied to these other witnesses also.

Clark was offered ample opportunity to subpoena witnesses, but he did not comply with basic rules of criminal procedure, declining assistance, declining to make a proffer of their testimony, and failing to present the State with a list ten days before trial. The trial court

committed no error, and Clark was not denied his Sixth Amendment right to represent himself effectively.

3. Clark contends that the trial court erred in allowing the State to comment on the witnesses' credibility by asking the investigating officer if he thought any of the four eyewitnesses were lying to him. The officer responded no. Clark asked the officer on cross-examination, "So to the best of your knowledge, these [witness] statements were true?" The officer replied, "I believe the statements were the truth as they saw it that night."

The State's question was clearly improper, as it bolstered the credibility of the eyewitnesses. *Cline v. State*, 224 Ga. App. 235, 237 (2) (480 SE2d 269) (1997). "This State has long followed the contemporaneous objection rule, which provides that counsel must make a proper objection on the record at the earliest possible time to preserve for review the point of error. [Cit.]" *State v. Larocque*, 268 Ga. 352, 353 (489 SE2d 806) (1997). Because he failed to object promptly, Clark has waived his right to argue this error on appeal. *Earnest v. State*, 262 Ga. 494, 496 (3) (422 SE2d 188) (1992).

While Clark's appellate counsel argues that this question seriously affected the fairness of the proceeding and thus we should look at it despite his failure to object, "even if counsel timely objects to certain testimony, its admission is not error where substantially the same evidence is subsequently admitted without objection. [Cits.]" *State v. Larocque*, supra, 268 Ga. at 353. Clark not only failed to object to the question, he brought out the same information on cross-examination by asking the officer if he thought the witnesses' statements were true. Thus, we find no error.

4. Clark contends that the trial court erred in failing to give a contemporaneous limiting instruction when the victim testified about prior difficulties between her and Clark, even absent a request from him. As the State questioned the witness regarding Clark's conduct toward her before the kidnapping, the court sent the jury out and discussed with the State whether such evidence was proper and whether a contemporaneous limiting instruction was necessary. The State explained that the evidence was being introduced to establish motive, based on the "state of feeling between the defendant and the victim in this case." The court concluded that the evidence was admissible, and relied on the State's representation that a contemporaneous limiting charge was not necessary.

In overruling precedent and concluding that a trial court no longer had to conduct a pre-trial hearing and make certain findings before evidence of prior difficulties between the defendant and the victim could be admitted at trial, the Supreme Court of Georgia held that "the admission of such evidence should be accompanied by an instruction from the trial judge explaining the limited use to which

the jury may put such evidence." *Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998). However, the failure to do so is not error in the absence of a request. See *State v. Belt*, 269 Ga. 763, 764 (505 SE2d 1) (1998). It follows that, having failed to request a limiting instruction, Clark cannot assert that the trial court erred because it did not give such an instruction. The trial court did, however, include the limiting instruction in its charges at the end of trial.

Clark asserted his right to represent himself, and was advised that he would be held to the same rules that a lawyer would be. His failure to request a contemporaneous limiting charge waives this argument on appeal.

5. Clark reserved his objections to the jury charges, and now asserts that the trial court erred in its kidnapping charge. He contends the charge was "argumentative and improper" because it defined the element of asportation as requiring only the slightest movement of the victim. We have previously affirmed the use of this charge in a case in which the kidnapping victim was transported in a car. *Ryan v. State*, 191 Ga. App. 477 (2) (382 SE2d 196) (1989). Further, Clark has not shown how this charge could have contributed to the verdict against him, as the evidence showed more than sufficient asportation because he drove the victim out of the county against her will. Finally, Clark failed to submit a request to charge regarding kidnapping, and thus cannot complain about the charge as given. See *State v. Stonaker*, 236 Ga. 1, 3 (222 SE2d 354) (1976).

The trial court did not err in giving this charge to the jury.

*Judgment affirmed. Johnson, P. J., concurs. Ruffin, C. J., concurs in judgment only.*

DECIDED MARCH 23, 2006 —

*Gerald P. Word*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.