## A07A0893. HOLLOWAY v. THE STATE.
### (653 SE2d 95)

BERNES, Judge.

An Upson County jury convicted Ronnie Holloway of burglary. Holloway appeals, arguing that the trial court erred in denying his motion to suppress DNA evidence and in allowing the jury to view a surveillance videotape over his objection. We disagree and therefore affirm.

On appeal, this Court views the evidence in the light most favorable to upholding the jury's verdict. *Chambers v. State*, 284 Ga. App. 400 (643 SE2d 871) (2007). We neither weigh the evidence nor determine witness credibility. Id. So viewed, the record reflects that on the morning of June 13, 2004, a custodian of East Thomaston Baptist Church arrived at the church to discover that the front door was damaged and a side window was broken. He immediately called the police.

After the investigating officer arrived, she determined that someone had "busted in" the front door with a sharp object in order to gain access to the church. Inside, she observed that the church was in disarray and discovered that the church's safe had been taken outside the church and its door removed. She also found and collected blood droplets that she believed to have come from the perpetrator near broken glass from two interior office doors.

During her investigation, the officer learned that the church had a surveillance camera which monitored the hallway outside of the internal church offices. The camera was attached to a video recorder that was set to begin recording when any of three strategically placed motion sensors were triggered. After watching the videotape, the officer immediately went to arrest Holloway, whom she had known for 19 years. She found Holloway hiding underneath a mattress in a bedroom of his brother's house. Holloway had a small laceration on the palm of his hand.

The officer subsequently obtained and executed a search warrant for the drawing of a blood sample from Holloway. A forensic biologist from the state crime laboratory conducted a DNA test on Holloway's blood and compared it to the blood found at the crime scene. She determined "with a reasonable scientific certainty" that the blood found at the church belonged to Holloway. Specifically, she testified that the likelihood that the blood found at the church belonged to someone other than Holloway was 1/20,000,000,000,000,000.

1. Holloway contends that the trial court erred in denying his motion to suppress the DNA evidence. He argues that the search warrant which authorized the taking of his blood sample for the DNA comparison failed to specify with particularity the item to be seized and thus gave the executing officers insufficient notice of the evidence to be collected. We disagree.

Both the Fourth Amendment to the United States Constitution and Art. I, Sec. I, Par. XIII of the Georgia Constitution "require that a search warrant particularly describe the article or articles sought." (Citations omitted.) *Dobbins v. State*, 262 Ga. 161, 164 (3) (415 SE2d 168) (1992). "While the degree of the description's specificity is flexible and will vary with the circumstances involved, it cannot leave the determination of what articles fall within the warrant's description and are to be seized entirely to the judgment and opinion of the [individual] executing the warrant." (Citation omitted.) Id. "Descriptions appearing in warrant applications or other documents may provide the necessary particularity if the document bearing the description accompanies the warrant and the warrant expressly refers to the other document to incorporate it by reference." (Footnote omitted.) *Battle v. State*, 275 Ga. App. 301 (620 SE2d 506) (2005).

Here, the contested warrant commanded a search for "the following described property, to wit: Ronnie Holloway, evidence associated with a burglary investigation to include: blood evidence associated with a burglary." The attached affidavit, however, which was incorporated into the warrant by reference, provided in pertinent part "a search warrant for . . . blood of Ronnie Holloway for DNA sample comparison." Elsewhere, the affidavit requested the issuance of a search warrant to "obtain sample from the person [sic] of Ronnie Holloway, to wit: his blood." Read together, the warrant and the attached affidavit particularly described the evidence to be seized and gave the executing officers adequate notice of the search warrant's scope and command. Accordingly, the trial court did not err in denying Holloway's motion to suppress the DNA evidence. See *Lester v. State*, 278 Ga. App. 247, 249-250 (1) (628 SE2d 674) (2006) (considering both the warrant and the affidavit to conclude that the officer provided sufficient detail to identify the subject location

despite the fact that the address in the warrant was typed incorrectly); *State v. Hicks*, 269 Ga. App. 741, 743 (605 SE2d 34) (2004) (considering both the warrant and the supporting affidavit to conclude that the description of the targeted location was sufficiently definite).

2. Holloway contends that the trial court erred in admitting the surveillance videotape because the tape did not contain the date and time on which it was recorded. Pursuant to OCGA § 24-4-48 (c), videotapes created by unmanned cameras

> shall be admissible in evidence when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered, provided that prior to the admission of such evidence the date and time of such . . . videotape recording shall be contained on such evidence and such date and time shall be shown to have been made contemporaneously with the events depicted in the . . . videotape.

Holloway correctly argues that the videotape did not contain a date and time in strict accordance with the terms of that statute. However, OCGA § 24-4-48 (d) provides that "[t]his Code section shall not be the exclusive method of introduction into evidence of . . . videotapes . . . but shall be supplementary to any other statutes and lawful methods existing in this state." Both this Court and our Supreme Court have affirmed trial courts' admission of videotapes, in circumstances such as in this case, where even though there are no contemporaneous date and times on the videotapes, there is other evidence of reliability. See, e.g., *Tolver v. State*, 269 Ga. 530, 532 (3) (500 SE2d 563) (1998) (affirming the admission of a surveillance tape that had been spliced after the crime based upon the identification of the tape's brand name label and testimony from a store supervisor as to the store's surveillance procedures, a Georgia Bureau of Investigation agent who found the tape, and a forensic photographer who repaired the tape); *Wallace v. State*, 267 Ga. App. 801, 803-804 (1) (600 SE2d 808) (2004) (affirming the admission of a videotape despite the fact that it displayed the incorrect date when witnesses to the event confirmed the videotape's contents and the person who was responsible for inserting the tape explained his daily routine); *Ross v. State*, 262 Ga. App. 323, 326-328 (4) (585 SE2d 666) (2003) (affirming the admission of surveillance evidence that on its face reflected that it had been made on two different dates and times based upon the testimony of a store employee who was familiar with the surveillance procedures and who confirmed the content of the tape).

In the instant case, the trial court was presented with sufficient evidence from which it could be inferred that the tape reliably depicted the burglary taking place. The church custodian testified that on the morning of the burglary, he unlocked the box containing the videotape in the presence of the investigating officer. The investigating officer personally removed the videotape from the recorder and placed it into evidence. Her investigation subsequently revealed that the videotape contained footage from the day of the burglary as well as the previous day. On the tape, she personally observed Holloway, whom she had known for 19 years, breaking the window inside of the church. The church custodian testified that he had been at the church the previous evening, on June 12, at around 7:00 p.m. and found the church to be in good repair. Finally, the technician who had installed the security system described how the camera operated and explained that it had been programmed to record for four-minute periods of time after being activated. He concluded after watching the video that the camera had performed properly as it was designed to do.

Although the state was unable to present testimony from a witness who actually observed the events transpire contemporaneously with the recording of the tape — Holloway himself was the lone witness — the evidence presented established an adequate foundation for the tape's admission. Cf. OCGA § 24-4-48 (b) ("Subject to any other valid objection, . . . videotapes . . . shall be admissible in evidence when necessitated by the unavailability of a witness who can provide personal authentication and when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered."); *Tolver*, 269 Ga. at 532 (3); *Wallace*, 267 Ga. App. at 803-804 (1); *Ross*, 262 Ga. App. at 326-328 (4). Under these circumstances, the trial judge did not abuse his discretion by admitting the videotape into evidence and concluding that the absence of a date and time on the tape itself would go to the weight, not the admissibility, of the evidence. See *Ross*, 262 Ga. App. at 327-328 (4).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 27, 2007.

*Monica N. Hamlett*, for appellant.
*Scott L. Ballard, District Attorney*, for appellee.