## A08A1171. GREATER GEORGIA LIFE INSURANCE COMPANY, INC. v. EASON.
### (665 SE2d 725)

BLACKBURN, Presiding Judge.

Following the death of her husband (Jerry Lee Eason), Vera Eason sued Greater Georgia Life Insurance Company, Inc. ("GGL") to collect the benefits of a life insurance policy which GGL had previously paid to her husband's son from a prior marriage. GGL appeals the denial of its summary judgment motion and the grant of summary judgment in favor of Mrs. Eason, arguing that the trial court erred in (i) finding that her husband's son was not the rightful beneficiary of the life insurance policy; (ii) finding that Mrs. Eason had not waived her claim to the portion of the benefits that were paid to a funeral home for her husband's burial expenses; (iii) finding that Mrs. Eason had not waived her claim to the benefits that were paid to her husband's son; and (iv) making a finding of fact that GGL had attempted to stop payment of the benefits. For the reasons set forth below, we reverse the grant of summary judgment to Mrs. Eason on

all issues and reverse the denial of summary judgment to GGL on the contention that Mrs. Eason waived her claim to the portion of the insurance proceeds that were used to pay for funeral expenses. We affirm the denial of summary judgment to GGL on all remaining issues.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*[1] "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." *McCaskill v. Carillo.*[2]

So construed, the evidence shows that Jerry Lee Eason was employed as a rail operator by the Metropolitan Atlanta Rapid Transit Authority ("MARTA") from 1984 until his retirement in 2003. During his employment, he enrolled in a group life insurance plan that MARTA provided to its employees. In this plan, MARTA contracted with and paid insurers to provide life insurance coverage for its employees. Over the course of Jerry Eason's employment, MARTA changed insurers for its life insurance plan several times. In 1993, Jerry Eason submitted a signed Life Insurance Enrollment form to MARTA, which designated his son from a prior marriage, Garlantric Eason, as the beneficiary of his group life insurance policy. After he retired, he maintained his eligibility for the group life insurance benefits under MARTA's employee benefit plan.

In 2005, two years after Jerry Eason retired, MARTA contracted with GGL to provide the group life insurance coverage for its employees. With regard to beneficiaries, the GGL plan provides:

> The employee may name a Beneficiary or Beneficiaries in his application for insurance. Subject to any legal restrictions, the Employee may change the Beneficiary. An appointment or change of Beneficiary must be in writing and signed by the Employee. The interest of any prior Beneficiary will cease as of the date of the request. . . . If there is no legally appointed beneficiary living at the time of your death, the amount of insurance for which there is no beneficiary will be payable in equal shares to the first of the following surviving beneficiaries: 1. Legal spouse; 2. Natural and legally adopted children; . . .

Because MARTA paid all of the premiums and administered the GGL

---

[1] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002).
[2] *McCaskill v. Carillo*, 263 Ga. App. 890 (589 SE2d 582) (2003).

STATE LAW LIBRARY

plan on behalf of its employees, employees were not required to complete any new enrollment forms to maintain coverage when MARTA changed insurers.

Jerry Eason died on May 24, 2006. At the time of his death, he was married to Vera Eason. Shortly after her husband's death, Mrs. Eason contacted MARTA to notify it that she was the beneficiary of her husband's group life insurance policy but was informed by MARTA that the forms in its files listed Garlantric Eason (Jerry's son) as the beneficiary of the $40,000 GGL policy. Mrs. Eason allegedly responded that she was "alright" with Garlantric receiving the benefits, as long as he used part of the proceeds to pay for her husband's funeral expenses. Around that same time, Mrs. Eason contracted with a local funeral home for her husband's funeral and burial but indicated that an "Insurance Assignment" would cover the expenses. On June 12, 2006, Garlantric Eason executed an "Assignment of Proceeds of Insurance" form, which authorized GGL to pay $10,719.45 to that local funeral home. Two weeks later, MARTA sent GGL a "Beneficiary Claim Form," which listed Garlantric Eason as the beneficiary of Jerry Eason's life insurance policy. On July 5, 2006, GGL paid $29,563.29 of the policy proceeds to Garlantric Eason and, two days later, paid $10,719.45 of the proceeds to the local funeral home pursuant to Garlantric's assignment.

On July 10, 2006, Mrs. Eason met with MARTA's manager of employee benefits and provided her with a yellow carbon copy of a Beneficiary Designation Form, which named her as the beneficiary of Jerry Eason's life insurance policy and was purportedly signed by her husband on April 24, 2004. Although MARTA did not have the original or a copy of this form in its files, Mrs. Eason claimed that she had witnessed her husband signing the form and that she had personally mailed the form to MARTA. That same day, Mrs. Eason faxed a letter and the 2004 Beneficiary Designation Form to GGL. In her letter, Mrs. Eason requested that GGL stop payment of the proceeds to Garlantric Eason but noted that payment to the funeral home was "acceptable." Believing that it had already paid the correct beneficiary, GGL refused Mrs. Eason's request.

As a result of GGL's refusal to stop payment of her husband's life insurance policy proceeds, Mrs. Eason filed suit against GGL, demanding the full amount of the policy's benefits. After discovery, both parties moved for summary judgment. Subsequently, the trial court denied GGL's motion but granted summary judgment in favor of Mrs. Eason and awarded her $40,000, plus statutory prejudgment interest. This appeal followed.

1. We first address GGL's contention that the trial court erred in finding that Garlantric Eason (Jerry Eason's son) was not the

rightful beneficiary of the life insurance policy and that Mrs. Eason was the rightful beneficiary as a matter of law. "In this state, insurance contracts are governed by the rules of construction applicable to other contracts, and words in the policy must be given their usual and common signification and customary meaning." (Punctuation omitted.) *Cuyler v. Allstate Ins. Co.*[3]

> Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent. The contract is to be considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others.

(Citation omitted.) *Boardman Petroleum v. Federated Mut. Ins. Co.*[4] "[C]onstruction of a contract is a question of law for the court. Where any matter of fact is involved, the jury should find the fact." OCGA § 13-2-1. Additionally, "whether a contract is ambiguous is a question of law for the court." (Punctuation omitted.) *Cuyler*, supra, 284 Ga. App. at 412 (3).

(a) *The GGL contract did not invalidate the 1993 beneficiary designation.* Here, the evidence shows that in 1993 Jerry Eason designated his son, Garlantric Eason, as the beneficiary of the group life insurance policy by indicating this preference on an enrollment form supplied by MARTA. The GGL life insurance policy obtained by MARTA for its employees in 2005 provides that: "The employee may name a Beneficiary or Beneficiaries in his application for insurance. Subject to any legal restrictions, the Employee may change the Beneficiary. An appointment or change of Beneficiary must be in writing and signed by the Employee." Mrs. Eason argues, and the trial court agreed, that the designation of Garlantric as beneficiary was invalid because that designation was submitted long before the GGL life insurance policy became effective. She further argues that since the designation of Garlantric is invalid, she is the default beneficiary as Jerry Eason's spouse. In support of her argument, Mrs. Eason cites to a section of the GGL policy which provides that: "The entire contract between the parties consists of: a. the pages of this policy, with any amendments; b. the application attached to this policy; c. the applications from Employees, with Evidence, and enrollment forms, if any, of each covered person." Based on this language, Mrs. Eason argues that the 1993 enrollment form cannot

[3] *Cuyler v. Allstate Ins. Co.*, 284 Ga. App. 409, 412 (3) (643 SE2d 783) (2007).

[4] *Boardman Petroleum v. Federated Mut. Ins. Co.*, 269 Ga. 326, 328 (498 SE2d 492) (1998).

be considered part of the contract.

However, nothing in the language of this provision or any other part of the GGL policy invalidates previously designated beneficiaries. In fact, other sections of the GGL contract demonstrate that MARTA as the policyholder (not GGL) was responsible for collecting and maintaining employees' information for administration of the policy, and thus, the information contained in its files is dispositive of its employees' choices. For example, under the heading "Information to be Furnished," the contract provides that: "The Group Policyholder will give GREATER GEORGIA LIFE all information necessary to administer coverage under the policy." In addition, the contract also provides: "At all times You will be considered to be the legal agent for Your employees applying for coverage under this policy." Thus, in construing the GGL contract as a whole, we find that the trial court erred in ruling that it invalidated any designation of beneficiaries that occurred prior to its effective date.

(b) *Questions of fact remain as to whether Jerry Eason intended to change beneficiaries.* Alternatively, Mrs. Eason argues that the Beneficiary Designation Form that her husband purportedly executed in 2004 made her the beneficiary of his life insurance policy and invalidated the 1993 form, according to the GGL policy. On appeal, GGL counters that the 2004 form is invalid because there is no evidence that it was ever received by MARTA.

> An insurance company may make reasonable regulations defining the methods by which a policyholder may change the beneficiary named in his policy; and when such regulations are made they become part of the contract, and the right to change can be exercised in no other way.

(Punctuation omitted.) *Lake v. Young Harris Alumni Foundation.*[5] "Mere expression of intent to change a beneficiary without some overt act is not sufficient to effectuate such a change." *Westmoreland v. Westmoreland.*[6]

> If the insured has done substantially all that is required of him, or all that he is able to do, to effect a change of beneficiary, and all that remains to be done is [a] ministerial action of the [association], the change will take effect though the details are not completed before the death of the insured.

---

[5] *Lake v. Young Harris Alumni Foundation*, 283 Ga. App. 409, 410 (1) (641 SE2d 628) (2007).

[6] *Westmoreland v. Westmoreland*, 280 Ga. 33, 34 (622 SE2d 328) (2005).

(Punctuation omitted.) Id. See *Lake*, supra, 283 Ga. App. at 410 (1).

Here, the 2004 Beneficiary Designation Form that Jerry Eason allegedly executed can be construed as evidence that he intended to change the beneficiary of his life insurance policy from his son to his wife. However, because the original is missing and there is also evidence that MARTA never received this form, questions of fact remain as to whether Jerry Eason's alleged intent to change beneficiaries was ever formally requested as contemplated by the GGL policy, and thus questions of fact remain as to whether this change was effectuated. Compare *Hinkle v. Woolever*.[7] Accordingly, the trial court erred in finding that, as a matter of law, Mrs. Eason was the rightful beneficiary of her husband's life insurance policy.

2. GGL contends that the trial court erred in finding that Mrs. Eason did not waive her claim to the portion of the benefits that were paid to a funeral home for her husband's burial expenses as a matter of law. We agree.

> A waiver may be express, or may be inferred from actions, conduct, or a course of dealing. Waiver of a contract right may result from a party's conduct showing his election between two inconsistent rights. Acting on the theory that the contract is still in force, as by continuing performance, demanding or urging performance, or permitting the other party to perform and accepting or retaining benefits under the contract, may constitute waiver of a breach. However, all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist.

(Punctuation omitted.) *Bollea v. World Championship Wrestling*.[8] Where the evidence conflicts, the issue of waiver is a question for the trier of fact. See *McCullough v. McCullough*.[9]

Here, a letter from Mrs. Eason to GGL shows that she explicitly informed GGL that its payment to the funeral home for her husband's burial expenses was "acceptable." Additionally, in contracting with the funeral home for her husband's burial, Mrs. Eason indicated that an "Insurance Assignment" would cover the expenses. No evidence in the record conflicts with this acceptance. Mrs. Eason's own affidavit fails to demonstrate that she ever withdrew her consent to the payment to the funeral home or that she initially

---

[7] *Hinkle v. Woolever*, 249 Ga. App. 249, 252 (547 SE2d 782) (2001).

[8] *Bollea v. World Championship Wrestling*, 271 Ga. App. 555, 562 (5) (610 SE2d 92) (2005).

[9] *McCullough v. McCullough*, 263 Ga. 794, 795 (1) (439 SE2d 486) (1994).

contested that payment. Thus, Mrs. Eason has waived her right to claim that she is owed the portion of the benefits that GGL used to pay the funeral home expenses. See *Reebaa Constr. Co. v. Chong*.[10] Accordingly, the trial court erred in granting summary judgment to Mrs. Eason and denying it to GGL on this issue.

3. GGL contends that the trial court erred in finding as a matter of law that Mrs. Eason did not waive her claim to the benefits that were paid to her husband's son. We agree.

> [W]here the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible.

(Citation and punctuation omitted.) *Bollea*, supra, 271 Ga. App. at 562 (5).

Here, Mrs. Eason, in her affidavit, states that she immediately informed MARTA that she was the beneficiary of her husband's life insurance policy and that she did not acquiesce when MARTA informed her that its records showed otherwise. Additionally, Mrs. Eason's letter to GGL, requesting that it stop its payment of the insurance proceeds to Jerry Eason's son, is evidence that she did not intend to waive her alleged right to those proceeds. However, GGL offered evidence that Mrs. Eason not only acquiesced to MARTA's contention that she was not her husband's beneficiary but that she also told MARTA that she would have her stepson (Garlantric) contact MARTA so that he could assert his claim to the proceeds. Given these circumstances, there are issues of fact remaining as to whether Mrs. Eason consented to GGL's payment of the insurance proceeds to Jerry Eason's son. See id. Accordingly, the trial court erred in granting summary judgment to Mrs. Eason on this issue.

4. GGL further contends that the trial court erred in making a finding of fact that GGL had attempted to stop payment of the benefits to her husband's son. We agree that there is no competent evidence in the record indicating that GGL attempted to stop payment of the benefits.

"OCGA § 9-11-56 (c) authorizes a trial court, in ruling on a motion for summary judgment, to consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." (Punctuation omitted.) *Durben v. Ameri-*

---

[10] *Reebaa Constr. Co. v. Chong*, 283 Ga. 222, 224 (2) (657 SE2d 826) (2008).

YALE LAW LIBRARY

*can Materials, Inc.*[11] Here, in support of her claim that GGL attempted to stop payment of the benefits, Mrs. Eason cites to what appears to be a computer printout summary of Jerry Eason's policy, which contains a comment regarding a legal hold being placed on the account, and email correspondence from a representative of GGL to a representative of MARTA, acknowledging that GGL's legal department has reviewed the matter. Although both of these documents were produced during discovery, there is no evidence that either was authenticated, and, therefore both were inadmissible hearsay that could not be considered as evidence in support of Mrs. Eason's motion for summary judgment. See *Valentin v. Six Flags Over Ga.*[12] Accordingly, the trial court erred in making the finding of fact that GGL attempted to stop payment of the benefits.

In summary, we reverse the grant of summary judgment to Mrs. Eason on all issues and reverse the denial of summary judgment to GGL on its contention that Mrs. Eason waived her claim to the portion of the insurance proceeds that were used to pay her husband's funeral expenses. We also reverse the trial court's finding that GGL attempted to stop payment of the benefits but affirm the denial of summary judgment to GGL on all remaining issues.

*Judgment affirmed in part and reversed in part. Miller and Ellington, JJ., concur.*

DECIDED JULY 10, 2008 — 

*Nall & Miller, Mark D. Lefkow, Michael R. Hurst*, for appellant. *Kenneth I. M. Behrman*, for appellee.

---

[11] *Durben v. American Materials, Inc.*, 232 Ga. App. 750, 752 (1) (503 SE2d 618) (1998).

[12] *Valentin v. Six Flags Over Ga.*, 286 Ga. App. 508, 511 (649 SE2d 809) (2007).

