A11A0470. HAMMOCK et al. v. ISSA.
(713 SE2d 717)

DOYLE, Judge.
James Hammock and Emily Hammock appeal the denial of their application for confirmation of a foreclosure sale under power,

---

arguing that the order was not supported by the evidence. We disagree and affirm.

The material facts are not in dispute. The Hammocks sold their Stockbridge home to Michael Shane Issa in exchange for a promissory note in the amount of $319,500 and a deed to secure debt. The deed included a power-of-sale provision authorizing the Hammocks to conduct a nonjudicial foreclosure in the event of default. As alleged in the Hammocks' subsequent report of foreclosure sale and application for confirmation of foreclosure sale under power, Issa defaulted on the note by failing to make payments when due, to provide proof of insurance, or to timely pay the taxes on the property. After publishing the foreclosure notice, the Hammocks offered the property for auction on June 1, 2010. The Hammocks, who were the only bidders, purchased the property for $230,000.[1] The Hammocks then filed their petition for confirmation of the sale pursuant to OCGA § 44-14-161.

At the confirmation hearing, the Hammocks established that the sale was properly noticed and advertised and then submitted the testimony of their expert appraiser, Tim Ballew.[2] Ballew testified that in his opinion, the fair market value of the property was $230,000. To reach this conclusion, Ballew reviewed the tax records of the property to discern physical data, including zoning and square footage, visually inspected the outside of the property from the street, and compared it to recent sales of similar homes in the area. Ballew's written appraisal was also admitted into evidence without objection. Issa put forth no evidence of value, expert or otherwise, to contradict Ballew's opinion. Instead, he cross-examined Ballew as to whether it was necessary to conduct an interior inspection of the house to conduct the appraisal. Ballew responded:

> I don't feel that an interior inspection would have made much of a difference on this property. . . . It was consistent with the other properties in the neighborhood and certainly consistent with the sales that I use to support value. . . . Certainly there are issues that could be unknown to me that would affect value, but from the street there were none that were obvious.

Issa followed up by asking, "[S]ince we have some assumption there's some room for a variable in there?" Ballew responded,

---

[1] This price was based on an appraisal of the property conducted by Tim Ballew on May 28, 2010, just a few days before the sale.

[2] Ballew has been certified in real estate appraisal since 1992 and performed over 20,000 appraisals.

"[P]ossible. Depending on condition. But like I said, at the time I inspected the property it appeared to be in average condition and consistent with the condition of other homes in the neighborhood."

Issa then took the witness stand and testified that he installed "granite throughout the house," a glass cook top, new sinks, and two new pool pumps. He also built an outdoor kitchen and a gazebo, but he did not complete those projects because of financial limitations. According to Issa, he properly maintained the property, with the exception of the lawn and the pool, which was no better or worse in condition than when he purchased the property. Issa admitted "the pool is green." While he gave no values or actual expense costs, he testified he had "put a lot of time, money, and effort into this home."

Following the hearing, the trial court denied the application to confirm the sale, concluding in its order:

> Upon consideration of the evidence presented, the arguments of the parties, and the record as a whole, the Court finds that the Plaintiff has failed to demonstrate to a preponderance of the evidence that the foreclosure sale yielded the fair market value of the property. Specifically, the Court finds that the Plaintiff's appraiser failed to account for substantial improvements to the interior of the residence in developing his opinion of the market value of the subject property.

"A trial court cannot confirm a foreclosure sale unless it is satisfied that the property so sold brought its true market value. True market value is the price that the property will bring when it is offered for sale by one who is not obligated, but has the desire to sell it, and is bought by one who wishes to buy it, but is not under a necessity to do so."[3] The

> [v]alue on the date of sale is a factual question to be resolved by the trier of fact. In a proceeding for confirmation of a foreclosure sale of real property, the judge sits as a trier of fact, and his findings and conclusions have the effect of a jury verdict. Where the trial judge, sitting as the trier of the facts, hears the evidence, his finding based upon conflicting evidence is analogous to the verdict of a jury and should not

---

[3] (Punctuation omitted.) *Statesboro Blues Dev. v. Farmers &c. Bank*, 301 Ga. App. 851, 852 (690 SE2d 205) (2010). See OCGA § 44-14-161 (b).

be disturbed by a reviewing court if there is any evidence to support it.[4]

"Our review of the trial court's determination of true market value is whether the record contains any evidence to support the findings of the trial court and not whether the evidence upon which the findings were based is the most accurate."[5] "Furthermore, we do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment."[6]

Here, although Issa did not present expert testimony regarding the value of the property, he did contest the accuracy and validity of the Hammocks' expert's valuation, particularly Ballew's failure to conduct an interior inspection of the home. Issa testified about specific improvements to the property not known by Ballew. And even though Ballew testified these unknown improvements would not have changed his opinion of the property's value, it was within the trial court's discretion to find the expert's testimony as to valuation unpersuasive based, at least in part, on his failure to inspect the interior of the property.[7] "The trial court is the judge of the credibility of the witnesses and of the weight to be given the evidence," and we will not disturb the trial court's decision to reject Ballew's opinion.[8] Because the trial court was not satisfied that the property sold for its true market value and there was evidence to support that determination, we affirm the trial court's order denying the Hammocks' application for confirmation.[9]

*Judgment affirmed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED JULY 6, 2011.

*Isenberg & Hewitt, Ryan L. Isenberg*, for appellants.

---

[4] (Punctuation omitted.) *Trefren v. Freedom Bank of Ga.*, 300 Ga. App. 112, 113 (684 SE2d 144) (2009).

[5] (Punctuation omitted.) *REL & Assoc. v. Fed. Deposit Ins. Corp.*, 304 Ga. App. 33, 34-35 (1) (695 SE2d 370) (2010).

[6] (Punctuation omitted.) *Statesboro Blues Dev.*, 301 Ga. App. at 852.

[7] Our opinion does not, as the Hammocks argue, impose a requirement that an appraiser conduct an interior inspection. Instead, as required by the standard of review, we defer to the trial court regarding its determinations as to credibility and the weight of the evidence.

[8] *Chamblee Hotels v. Chesterfield Mtg. Investors*, 287 Ga. App. 342, 345 (651 SE2d 447) (2007).

[9] See OCGA § 44-14-161 (b); *Govt. Nat. Mtg. Assn. v. Belue*, 201 Ga. App. 661, 661-662 (1) (411 SE2d 894) (1991); *American Century Mtg. Investors v. Strickland*, 138 Ga. App. 657, 660-661 (1) (227 SE2d 460) (1976).