## A11A1492. DILLON et al. v. REID.

(717 SE2d 542)

MILLER, Presiding Judge.

Danny L. Reid and his neighbors, Michael W. and Jennifer T. Dillon, own property abutting Lake Lanier. Reid sued the Dillons claiming that they were in breach of an agreement, made for the express and direct benefit of Reid, to place their floating dock 132 feet away from a certain existing dock (the "Lot 10 dock"). Reid claimed that the Dillons had moved their floating dock so close to the Lot 10 dock that Reid could not receive a permit from the Army Corps of Engineers (the "Corps") to place his own dock between the Dillons' dock and the Lot 10 dock. Following a hearing, the trial court granted Reid's motion for an interlocutory injunction and ordered the Dillons to move their dock so that it was no closer than

132 feet from the Lot 10 dock, consistent with the terms of the agreement. The Dillons appeal, and we affirm because the trial court did not abuse its discretion in balancing the equities and granting the injunction, thereby preserving Reid's opportunity to apply for a dock permit before the deadline for doing so expired.

The evidence shows that on July 7, 2003, the Dillons entered into a Lot/Land Purchase and Sales Agreement with Bill Barnett, manager of Ivy Shaw, LLC. Under the terms of the Sale Agreement, the Dillons agreed to buy Lot 2 of the Ivy Shaw Landing subdivision in Forsyth County. Lot 2 included a fee simple "walking path" to Lake Lanier intended to provide access to the water and to qualify the property for a boat dock.

The Sale Agreement was subject to several special stipulations, including that it was contingent upon verbal approval of the Corps for placement of a 32 foot by 32 foot double slip boat dock. Barnett and the Dillons met with a Corps ranger at the proposed dock site before closing. The ranger verbally approved the dock location, which she marked by tying a ribbon around a tree near the shore line.

The special stipulation also required the Dillons to submit to the "seller and or Developers a site plan showing the exact location of a 32x32 double slip boat dock." For purposes of water access, Lot 2 was adjacent to Lot 1, which was then owned by Ivy Shaw; Lot 1 was adjacent to Lot 10. According to Barnett, the site plan was important because there needed to be enough space, consistent with Corps rules, to place a boat dock for Lot 1 between the Lot 2 dock and the Lot 10 dock. The Corps' shoreline management plan for Lake Lanier required a 50-foot buffer area between any proposed floating dock and any existing facility, measured by the nearest point between them.

Shortly before closing, the Dillons submitted a site plan showing the location of the Lot 2 dock. The plan depicted a dock labeled "Future 32x32 (Lot 1)," with a 50-foot buffer space on each side between the site of the Lot 2 dock and the existing Lot 10 dock, such that there was 132 feet between the closest point of the site of the Lot 2 dock and the Lot 10 dock. The site plan was signed by Michael Dillon and Barnett on July 29, 2003, and on that same date Lot 2 was deeded by Ivy Shaw to the Dillons. On September 2, 2003, the Dillons placed their dock in line with the ranger's ribbon.

On or about March 21, 2005, Reid bought Lot 1 from Ivy Shaw. In 2007, Reid asked his son, Brad Reid, to assist him in obtaining a dock permit from the Corps. Brad Reid discovered that the Dillons' dock was too close to the Lot 10 dock to allow for the Lot 1 dock to be placed between the two. In July 2007, after some unsuccessful discussions with Michael Dillon, Brad Reid formally demanded that the Dillons move their dock so it was no less than 132 feet from the

Lot 10 dock. The Dillons refused to move their dock. That same year, the Corps placed a moratorium on the permitting of new docks, and Reid did not pursue the matter until after Reid was selected by the Corps in a 2009 lottery to apply for a dock permit.

As of 2010, the distance between the closest point of the Lot 2 dock and the Lot 10 dock was approximately 100 feet. Michael Dillon admitted to having moved the dock, but only to "chase the water" when the lake level dropped as allowed by Corps rules.[1] According to Brad Reid, however, the Dillons were "moving [the dock] down the shoreline."

On February 25, 2010, Reid sued the Dillons in the Superior Court of Forsyth County for breach of contract, injunction, and damages in light of the Dillons' failure to locate their dock in accordance with the Sale Agreement. On October 25, 2010, the trial court held an evidentiary hearing to consider Reid's motion for an interlocutory injunction. The trial court found that (i) the Dillons remained bound by the terms of the Sale Agreement to fulfill conditions and stipulations not fulfilled prior to or at the closing; (ii) Reid was a third-party beneficiary of the Sale Agreement; (iii) the Dillons' failure to locate their dock at least 132 feet from the Lot 10 dock was a breach of contract; and (iv) the breach damaged Reid by preventing him from having his dock permit approved by the Corps. The trial court ordered the Dillons to move their dock to a location no closer than 132 feet from the closest point of the Lot 10 dock pursuant to the Sale Agreement.

1. As a threshold matter, we address the Dillons' claim that "the trial court lacked subject matter jurisdiction due to federal preemption, [and] it should have dismissed [Reid's] case."[2] We disagree.

"The nature of any specific preemption claim will depend on congressional intent in enacting the particular preempting statute." (Punctuation omitted.) *Intl. Longshoremen's Assn. v. Davis*, 476 U. S. 380, 391 (II) (B), n. 9 (106 SC 1904, 90 LE2d 389) (1986). "[T]his Court reviews de novo whether federal law preempts state law claims." (Citation omitted.) *Gentry v. Volkswagen of America*, 238 Ga. App. 785, 786 (521 SE2d 13) (1999). Reid presents a breach of contract claim based upon provisions of the Sale Agreement entered into by the Dillons, as well as a claim for injunctive relief, and the superior court has "jurisdiction in all cases, except as otherwise provided in [the

---

[1] The parties do not contend that the water level was at less than full pool at the time of the hearing.

[2] Reid claims that the Dillons did not argue federal preemption below, but "jurisdiction of the subject matter cannot be waived, consent cannot confer jurisdiction and the lack of jurisdiction can be taken advantage of at any time." (Citation omitted.) *Champion v. Rakes*, 155 Ga. App. 134, 135 (270 SE2d 272) (1980).

Georgia] Constitution," Ga. Const. of 1983, Art. VI, Sec. IV, Par. I, and authority "[t]o exercise the powers of a court of equity[.]" OCGA § 15-6-8 (2). The Dillons do not point to any federal law that would preempt the trial court as an appropriate forum for adjudicating the rights and remedies of the parties in this action. Compare *Local No. 438, Construction &c. Union v. Curry*, 371 U. S. 542, 548 (83 SC 531, 9 LE2d 514) (1963) (finding "a judgment of the Georgia court finally and erroneously asserting its jurisdiction to deal with a controversy which is beyond its power and instead is within the exclusive domain of the National Labor Relations Board"); *Stivali v. Aquiport Aylesbury*, 244 Ga. App. 389, 391 (1) (535 SE2d 551) (2000) (trial court lacked subject matter jurisdiction over claim that appellees violated the terms of the bankruptcy court's order lifting the stay).

Further, we disagree with the Dillons that Congress intended to preempt the trial court's jurisdiction to issue an injunction requiring them, in essence, to move their floating dock approximately 32 feet. As shown by the Dillons, the Corps has authority over the permitting of docks on Lake Lanier, and placement of docks in violation of the terms of a permit is prohibited. See 16 USC § 460d; 36 CFR §§ 327.19 (b), 327.20, 327.30. Although not proven, we acknowledge the possibility that the movement of the Dillons' dock would cause them to be in violation of Corps rules and thus cause the loss of their dock, and that such is relevant to the balancing of equities. But it does not follow that the Corps ranger's approval of the dock site precluded the application of Georgia law. For instance, the regulations provide that "[a]ll other Federal, state and local laws and regulations remain in full force and effect where applicable to those water resources development projects." 36 CFR § 327.0. The Corps also provides in its shoreline management plan for Lake Lanier that "[t]he State of Georgia and its political subdivisions retain statutory responsibility to enforce state and local laws." Based upon these provisions, we cannot discern a Congressional intent to preclude state action concurrently with the statutory and regulatory scheme establishing the Corps' authority over docks on Lake Lanier. See, e.g., *Cummings v. Chicago*, 188 U. S. 410, 427-431 (3) (23 SC 472, 47 LE 525) (1903) (although parties had the consent of the Secretary of War to erect a dock in the Calumet River and could not build the dock without such consent, Congress did not intend by the River and Harbor Act of 1899 to supersede the original authority of the States so as to allow the construction of the dock without the concurrent consent of the State of Illinois); *Danos v. Thompson*, 272 Ga. App. 69, 72 (2) (611 SE2d 678) (2005) (considering on the merits an injunction precluding appellant from using boat docks or reapplying for future dock permits from Corps).

2. The Dillons claim that the trial court erred in granting the

interlocutory injunction, because Reid failed to show that he would be irreparably harmed if the injunction was not granted, and because there was not a substantial likelihood that Reid would prevail on the merits. Again, we disagree.

> An interlocutory injunction is designed to preserve the status quo pending a final adjudication of the case, and in so doing, the trial court must balance the conveniences of the parties pending the final adjudication, with consideration being given to whether greater harm might come from granting the injunction or denying it. The decision whether to grant or deny interlocutory injunctive relief is in the discretion of the trial court, and we will not disturb the trial court's order in the absence of a manifest abuse of that discretion.

(Citations and punctuation omitted.) *Bijou Salon & Spa, LLC v. Kensington Enterprises*, 283 Ga. App. 857, 860 (643 SE2d 531) (2007). "However, where there is no conflict in the evidence, the judge's discretion in granting or denying the interlocutory injunction becomes circumscribed by the applicable rules of law." (Punctuation and footnote omitted.) *Green v. Waddleton*, 288 Ga. App. 369, 370 (1) (654 SE2d 204) (2007).

(a) The Dillons maintain that there was no evidence that Reid would be harmed if the Dillons' dock remained in place.

"There must be some vital necessity for the injunction so that one of the parties will not be damaged and left without adequate remedy." (Footnote and emphasis omitted.) *Hipster, Inc. v. Augusta Mall Partnership*, 291 Ga. App. 273, 275 (1) (661 SE2d 652) (2008). Such necessity existed here. At the time of the October 25, 2010 hearing on Reid's motion for interlocutory injunction, Reid's November 2, 2010 deadline for applying for a dock permit, as contemplated by the Corps' lottery, was fast approaching. Evidence showed that Reid could not obtain a permit so long as the Dillons' dock remained at its current location, which was too close to the Lot 10 dock to allow the required space to place Reid's dock. The trial court logically concluded that Reid "would be foolish to apply" for a permit under those conditions, as such would be futile. By ordering the Dillons to immediately move their dock, the trial court preserved Reid's opportunity to secure a dock permit. Any harm to the Dillons, on the other hand, rested on what the Dillons' attorney characterized as "a real danger . . . a chance" that, if moved, their dock would lose its "grandfathered" status and so subject the dock to the enforcement of Corps rules for which it was allegedly in violation.

The Dillons contend that the trial court's order did nothing for

Reid because Lot 1 was not eligible for a dock permit under the Corps' "100-foot rule," and there would be no irreparable harm to Reid if the Dillons' dock remained in place. The Corps' shoreline management plan provides that "[t]he selected site for any floating facility must be at the nearest point of shoreline to the adjacent owner's private property" with a deviation of not more than 100 feet left or right of such point if "water depth or spacing is a problem." Michael Dillon testified that if Reid was allowed to construct a dock it would be more than 100 feet from Lot 1, and so in violation of the 100-foot rule. On the other hand, Barnett, a nonparty, testified that it was possible for Reid to locate the dock within 100 feet of his property. The trial court was not required to accept Michael Dillon's testimony over that of Barnett. See generally *Hammock v. Issa*, 310 Ga. App. 547, 550 (713 SE2d 717) (2011) ("The trial court is the judge of the credibility of the witnesses and . . . we will not disturb the trial court's decision to reject [a witness's] opinion.") (punctuation and footnote omitted). Accordingly, the trial court was not required to conclude that an injunction would be of no benefit to Reid while placing the Dillons' interests at risk, or that the relative equities of the parties so favored the Dillons that the grant of an injunction was an abuse of discretion.

(b) The Dillons also contend that Reid was unlikely to prevail on the merits, and that the grant of injunctive relief was therefore improper. "Although not controlling, the trial court may consider the merits in balancing the equities." (Citation omitted.) *Pittman v. Coosa Med. Group*, 300 Ga. App. 529 (685 SE2d 753) (2009). The trial court did consider the merits in its order granting the motion for interlocutory injunction and, as addressed in Divisions 3 through 6 below, the trial court did not abuse its discretion in granting the injunction in light of its findings on the merits of the case.

3. The Dillons argue that the trial court erred in granting injunctive relief because Reid's claims were not asserted until after the statute of limitation had expired on his breach of contract claim. We disagree.

The statute of limitation for actions on simple written contracts is six years. OCGA § 9-3-24; *Cotton States Mut. Ins. Co. v. Atkinson*, 120 Ga. App. 695, 697 (172 SE2d 188) (1969). The time of breach controls, not the time the damages result or are discovered. *Gamble v. The Lovett School*, 180 Ga. App. 708, 710 (350 SE2d 311) (1986). The defense of statute of limitation is an affirmative defense under OCGA § 9-11-8 (c), and the Dillons had the burden of showing that Reid's claim was barred thereby. *Cleaveland v. Gannon*, 284 Ga. 376, 381 (2) (667 SE2d 366) (2008).

Reid filed his complaint on February 25, 2010. The trial court found based on photographic evidence that Reid's cause of action

accrued sometime in late 2006 or early 2007, when the Dillons moved their dock west of the location where their dock was to be located pursuant to the site plan. Therefore, the trial court concluded, Reid's claim was filed within the limitation period.

The Dillons contend that any breach of contract occurred when the dock was placed in September 2003. Testimony and photographic evidence showed that the Dillons placed their dock at the location approved by the Corps ranger. However, it does not appear that anyone measured the distance between the Lot 2 dock and the Lot 10 dock in 2003.[3] Barnett, however, testified that he had placed stakes where each dock would need to be located "to get all the docks in there." According to Barnett, the ranger approved placement of the Lot 2 dock in the approximate location of the stake for that dock. The Dillons argue that the only relevant testimony shows that a breach, if any, occurred in 2003, given Michael Dillon's testimony that he had not moved the dock from its original location. Michael Dillon also admits, however, that he had moved the Dillons' dock to "chas[e] the water," and Brad Reid testified that the Dillons moved the dock down the shoreline. In light of the evidence,[4] the trial court did not err in failing to conclude that the Dillons had established that Reid's breach of contract claim was filed outside the applicable limitation period.

4. The Dillons claim that the trial court erred in granting any relief to Reid because Reid was not a third-party beneficiary of the Sale Agreement and lacked standing to raise a breach of contract claim against the Dillons. We disagree.

"The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." OCGA § 9-2-20 (b). "[T]he third-party beneficiary need not be specifically named in a contract; the dispositive issue is whether the parties' intention to benefit the third party is shown on the face of the contract." (Footnotes omitted.) *Northen v. Tobin*, 262 Ga. App. 339, 344 (2) (b) (585 SE2d 681) (2003); see *Plantation Pipe Line Co. v. 3-D Excavators*, 160 Ga. App. 756, 757 (287 SE2d 102) (1981) (accord). However, "[t]he mere fact that [the third party] would benefit from performance of the agreement is not alone sufficient." (Citations and punctuation omitted.) *Armor Elevator Co. v. Hinton*, 213 Ga. App. 27, 30 (2) (443 SE2d 670) (1994).

The site plan submitted by the Dillons and approved by Barnett includes the depiction of a boat dock for Lot 1, labeled "Future 32x32

---

[3] Neither party suggests that the Lot 10 dock may have been moved since that time.

[4] The Dillons' attorney even stated in closing argument that "[t]here has been absolutely no evidence really of when the breach occurred."

(Lot 1)," and the distances written on the site plan are relative to the Lot 1 dock.[5] Thus, on its face the site plan's location of the Lot 2 dock was intended to benefit the owner of Lot 1 by protecting that owner's ability to place a dock between the Lot 2 dock and the Lot 10 dock. The Dillons argue that the parties could not have intended to benefit Reid as a future owner of Lot 1. Reid, however, though not specifically named, remained within the limited class of persons intended to be benefitted by the site plan approved under the stipulation to the Sale Agreement. See *Plantation Pipe Line Co.*, supra, 160 Ga. App. at 759 (although not specifically named in the contract, "plaintiff is a member of a relatively small group of intended beneficiaries"). The trial court did not err in concluding that Reid had standing to assert the breach of contract claim.

5. The Dillons claim that the trial court erred in entering the injunction because Barnett waived Reid's right to assert that the Dillons breached the Sale Agreement. See *Speir v. Nicholson*, 202 Ga. App. 405, 406 (1) (414 SE2d 533) (1992) (a "third-party beneficiary['s] . . . rights are no greater than those of the promisee"). "[A]ll the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist." (Citation and punctuation omitted.) *Greater Ga. Life Ins. Co. v. Eason*, 292 Ga. App. 682, 687 (2) (665 SE2d 725) (2008).

The Dillons contend that the seller, Ivy Shaw, through its agent, Barnett, waived any claim for breach of contract (and, by so doing, Reid's claims) when the Corps ranger marked the location of the dock without any objection by Barnett. However, the evidence does not demand the finding that placement of the dock consistent with the location designated by the ranger breached the Sale Agreement or that Barnett was aware of a breach of the Sale Agreement. Accordingly, we agree with Reid that Barnett was not shown to have engaged in any act, conduct, or course of dealing requiring a finding of waiver. See *English v. Muller*, 270 Ga. 876 (1) (514 SE2d 194) (1999) ("Whether waiver took place is an issue for the trier of fact.").

6. The Dillons contend that the trial court erred in admitting into evidence four photographs showing an aerial view of the Lot 2 dock and the Lot 10 dock and portions of the surrounding area. The Dillons argue that Reid failed to establish a sufficient evidentiary foundation. We disagree.

"The question of the sufficiency of the preliminary proofs to identify photographs, or to show that it is a fair or accurate

---

[5] The site plan depicts a 50-foot buffer between the Lot 1 dock and the Lot 10 dock, 32 feet for the Lot 1 dock itself, and an additional 50-foot buffer between the Lot 1 dock and the Lot 2 dock, the sum of which is the 132-foot distance between the Lot 2 dock and the Lot 10 dock applied by the trial court in its order.

representation of the objects which it purports to portray, is a question committed to the discretion of the trial judge." (Citation, punctuation and footnote omitted.) *Tyler v. State*, 275 Ga. App. 115, 116 (2) (619 SE2d 804) (2005). The Dillons rely on OCGA § 24-4-48 (c), which allows admission of photographs made by unmanned cameras "when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered," and

> prior to the admission of such evidence the date and time of such photograph, motion picture, or videotape recording shall be contained on such evidence and such date and time shall be shown to have been made contemporaneously with the events depicted in the photograph, videotape, or motion picture.

Id. In this case, there was not a date stamp on the photographs contemporaneous with the time that they were made, but only stamps indicating a 2010 copyright. Nevertheless, "[w]here a video or photograph lacks accurate date and time stamps, its admission may nonetheless be proper upon additional corroboration." (Footnote omitted.) *Dixon v. State*, 300 Ga. App. 183, 185 (2) (684 SE2d 679) (2009). See *Holloway v. State*, 287 Ga. App. 655, 657 (2) (653 SE2d 95) (2007) (accord).

Here, Brad Reid testified that he obtained two of the photographs from the "MapQuest" website and two of the photographs from the "Google" website. According to Brad Reid two of the photographs were taken "around 2006/2007" and the other two "later in 2007 and 2008." Brad Reid explained that he was familiar with the dates based on the change in lake levels. He further testified that the photographs truly and accurately depicted the locations of the docks at issue as of those time periods, and he confirmed that he had personally observed the docks. Notwithstanding that he did not have the exact same aerial view as the tendered photographs, Brad Reid explained the basis for his testimony as to the date of the photographs, and he testified that the photographs accurately depicted those locations as of those time periods. Accordingly, it was within the broad discretion of the trial court to allow the photographs to be introduced to show the locations of the docks during the time frames testified to by Reid. *Isaacs v. State*, 259 Ga. 717, 732 (26) (386 SE2d 316) (1989) ("Any witness who is familiar with the scene depicted can authenticate the photograph; it is not necessary that the witness be the photographer or even that the witness have been present when the photograph was taken."); *Tyler*, supra, 275 Ga. App. at 116 (2) ("A photograph is authenticated by showing it is a

fair and accurate representation of the scene depicted.") (punctuation and footnote omitted). "[T]he absence of a [contemporaneous] date and time on the [photographs themselves] would go to the weight, not the admissibility, of the evidence." *Holloway*, supra, 287 Ga. App. at 658 (2).

In sum, we affirm the trial court's grant of the motion for interlocutory injunction. "The trial judge has a wide discretion in balancing the equities in a case such as this. There being evidence to support [her], no reversal will be granted thereon." (Citation and punctuation omitted.) *Pittman*, supra, 300 Ga. App. at 534 (3).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED OCTOBER 13, 2011.

*Kaufman, Miller & Sivertsen, Robert J. Kaufman, Jeremy B. Liebman, Jordan B. Forman*, for appellants.

*Miles, Patterson, Hansford & Tallant, Dana B. Miles, Wendy W. Kraby, Jefferson M. Starr*, for appellee.