**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J., and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 11, 2013**

# In the Court of Appeals of Georgia

A12A2322. BRINKLEY v. THE STATE.

ANDREWS, Presiding Judge.

Jonas A. Brinkley was found guilty by a jury of kidnapping with bodily injury (by rape) against a female victim; rape of the female victim; kidnapping against a male victim; and armed robbery against the male victim. The rape conviction was vacated by operation of law by merger into the conviction for kidnapping with bodily injury. Brinkley was sentenced to the mandatory minimum of life imprisonment (with the possibility of parole) for kidnapping with bodily injury (OCGA § 16-5-40 (d) (4)); 20 years to serve consecutive for kidnapping; and 20 years to serve concurrent for armed robbery. Brinkley appealed his convictions and sentences to the Georgia Supreme Court claiming his constitutional rights were violated in a variety of ways. Among other claims, Brinkley contended that the life sentence violated the

constitutional prohibition against cruel and unusual punishment because he was only 14 years old at the time of the offenses, and that his due process rights were violated because his competency to stand trial was not assessed before he stood trial in the superior court at only 15 years of age.[1] The Supreme Court transferred the appeal to this Court on the basis that the cruel and unusual punishment constitutional claim was not timely raised and was waived, and that, because the other constitutional claims "all involve the application of well-established constitutional law to the particular facts of this case . . . jurisdiction over those issues is also properly in the Court of Appeals." *Brinkley v. State*, 291 Ga. 195, 195-196, 199-200 (728 SE2d 598) (2012). For the following reasons, we affirm.

1. The evidence was sufficient to support the convictions.

---

[1] The Superior Court of Tift County had exclusive jurisdiction to try Brinkley on the charged offenses. Under OCGA § 15-11-28 (b) (2) (A), "[t]he superior court shall have exclusive jurisdiction over the trial of any child 13 to 17 years of age who is alleged to have committed any of the following offenses: (i) Murder; (ii) Voluntary manslaughter; (iii) Rape; (iv) Aggravated sodomy; (v) Aggravated child molestation; (vi) Aggravated sexual battery; or (vii) Armed robbery if committed with a firearm." Under OCGA § 15-11-28 (b) (2) (B), "[a]fter indictment, the superior court may after investigation and for extraordinary cause transfer any case involving a child 13 to 17 years of age alleged to have committed any offense enumerated in subparagraph (A) of this paragraph which is not punishable by loss of life, imprisonment for life without possibility of parole, or confinement for life in a penal institution."

The female victim identified Brinkley as the person who pointed a pistol at her and her boyfriend as they sat on the front porch of her house, forced them to go inside the house, robbed her boyfriend of cash at gunpoint, forced her into another room of the house, forced her to disrobe and lay on the kitchen floor, and then raped her. The victim testified that she was crying and pleading with Brinkley to stop, but he threatened to kill her. She testified that

> [h]e was just telling me to f__k him back, that I knowed I liked it. And that he wanted me to make noise to show him that I liked what he was doing. He said, what do you want me to do, f__k you in your ass, suck your titties. And I told him no, I just wanted him to stop.

Evidence also showed that Brinkley had an accomplice during the commission of these offenses, Lakendrick D. Carter, age 19 at the time of the trial, who was co-indicted along with Brinkley. Carter testified for the State and identified Brinkley as the person who held the pistol on both victims and forced them to move about the house, who demanded and took the cash at gunpoint from the male victim, and who raped the female victim. A DNA analysis of semen found on the floor at the scene of the rape and a blood sample taken from Brinkley revealed that the semen came from Brinkley or his identical twin.

Brinkley testified in his defense that the female victim invited him over to her house and that they had consensual sex. Brinkley testified that:

> So she had started feeling on my penis; right. And so I had told her that I was young and plus she had said age . . . don't matter . . . [S]o she was like well . . . we really need to go inside of my room. And I was like, naw, because . . . your boyfriend might have came back. You know what I'm saying, didn't want to start nothing. She had said . . . [s]o we can go inside of the kitchen. So we had done went inside the kitchen and we had sex. And I had done been and came up out of her and she – it was ejaculation. And so when I had seen it on the floor I heard the door knob pop so I had ran out of the back door and somehow she had convinced the boyfriend that, you know, that I had raped her and robbed her and kidnapped her. And so, you know what I'm saying, because she had got caught and she was in the shock I guess.

Brinkley also said that he was alone and that he did not know Carter.

The testimony of the female victim and the accomplice, along with the DNA evidence, was sufficient for the jury to find beyond a reasonable doubt that Brinkley was guilty of the charged offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Brinkley contends that, even though he did not pursue a claim that he was incompetent to stand trial, the trial court erred by failing to sua sponte assess whether he was competent, and that this failure violated his constitutional right to due process.

> A trial court is to conduct, sua sponte, a competency hearing when there is information which becomes known to it, prior to or at the time

4

of the trial, sufficient to raise a bona fide doubt regarding the defendant's competence. The salient question is whether the trial court received information which, objectively considered, should reasonably have raised a doubt about the defendant's competency and alerted the trial court to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense.

*Lytle v. State*, 290 Ga. 177, 179 (718 SE2d 296) (2011) (punctuation and citations omitted). To answer this question, the focus is on "any evidence of the defendant's irrational behavior, the defendant's demeanor at trial, and any prior medical opinion regarding the defendant's competence to stand trial." *Traylor v. State*, 280 Ga. 400, 404 (627 SE2d 594) (2006).

Brinkley claims that a written statement he gave to police prior to trial and a remark he made to the Court at the sentencing hearing raised bona fide doubts regarding his competency. Prior to trial, Brinkley gave a written statement denying guilt that was grammatically incorrect and contained numerous misspellings. At the sentencing hearing, Brinkley told the Court that the evidence did not prove his guilt; that he was not that type of person because he had respect for other people; that all he used to do was go to school and stay home with his family and "[j]ust do what a child supposed to do." He claimed that the rape victim lied; that he had no reason to

5

lie about anything; and added that "I was going to ask about probably 10 to 15 years on probation."

According to Brinkley, a bona fide doubt as to his competency was raised because the pre-trial statement showed a "severe literacy impairment" and raised doubts about his education level and intelligence, and the request at the sentencing hearing for 10 to 15 years on probation showed that he did not understand the nature of the proceedings. We find that the statements raised no reasonable doubt as to whether Brinkley was competent – they did not alert the trial court to the possibility that he could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense. The record shows no irrational behavior at trial and no prior medical opinion regarding competency that would have caused the trial court to have reasonable doubts about Brinkley's competency to stand trial. The statements themselves were not evidence of irrational or other behavior that would have raised reasonable doubts about Brinkley's competency. What the statements did show, in conjunction with Brinkley's trial testimony, is that he understood the charges and maintained his innocence before, during, and after the trial. The trial court did not err by failing to hold a hearing sua sponte regarding Brinkley's competency.

Brinkley also claims that, because his age alone – 15 years at the time of trial – showed his "developmental immaturity," due process mandated that the trial court sua sponte conduct a hearing to assess his competency to stand trial on criminal charges in superior court. This claim has been previously raised on appeal and rejected. In *Lewis v. State*, 279 Ga. 69, 70-71 (608 SE2d 602) (2005), the Supreme Court rejected a similar claim made on the basis of age alone by a 14-year-old defendant tried on criminal charges in superior court. *Lewis* held that, "we decline appellant's request that we adopt a rule mandating competency hearings for children under 17 who face trial in superior court under OCGA § 15-11-28 (b) (2) (B)." Id. at 71.

3. Brinkley contends that the trial court erred by denying his motion for a new trial made on the basis that his trial counsel provided ineffective assistance.

> To obtain reversal of a conviction based on a claim of ineffective assistance of counsel, a defendant has the burden of proving that counsel's performance was deficient, and that, but for the deficiency, there was a reasonable probability the outcome of the trial would have been different. *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Terry v. Jenkins,* 280 Ga. 341, 342 (627 SE2d 7) (2006). To establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under the circumstances confronting

7

counsel at the time without resorting to hindsight. *Strickland,* 466 U. S. at 689-690; *Franks v. State,* 278 Ga. 246, 250 (599 SE2d 134) (2004). In considering adequacy of performance, trial counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U. S. at 690. "A claim of ineffective assistance of counsel is a mixed question of law and fact: we accept the trial court's factual findings unless clearly erroneous, but we independently apply the legal principles to the facts." *Franks,* 278 Ga. at 250.

*Connelly v. State*, 295 Ga. App. 765, 768-769 (673 SE2d 274) (2009). Applying this standard, we find no error in the trial court's refusal to grant a new trial because of alleged ineffectiveness of counsel.

Brinkley claims that his trial counsel was ineffective because counsel failed to assess his competency to stand criminal trial even though counsel "knew that his client failed to understand the punishment or consequences of his criminal trial." Brinkley contends that the statement he made at his sentencing hearing requesting that he be sentenced to 10 to 15 years on probation raised doubts as to his competency, and that trial counsel was ineffective by not taking steps to assess his competency. Brinkley's trial counsel testified at the hearing on the motion for new trial that, in his interactions with Brinkley in preparation for and during the criminal proceedings, he observed nothing that caused him to believe that Brinkley was not

8

competent to stand trial on the charges. In denying the motion for new trial, the trial court found that trial counsel's failure to assess Brinkley's competency was not deficient performance. As set forth in division 2, supra, we find nothing in the record that would have required the trial court to sua sponte assess Brinkley's competency to stand trial. For that reason, and based on the testimony given by trial counsel, we find no error in the trial court's ruling that counsel's performance was reasonable and not deficient.

4. Brinkley claims that, because the entire jury selection process was not reported and transcribed as part of the trial record, this deprived him of the constitutional right to assert that his trial counsel may have been ineffective during jury selection for failing to make an objection that should have been made.

Although objections and rulings thereon made during jury selection are required to be reported and made part of the trial record, there is no requirement that the entire jury selection be reported and made part of the record in a non-death penalty felony case. *State v. Graham*, 246 Ga. 341 (271 SE2d 627) (1980); OCGA § 5-6-41. Trial counsel may request that the entire jury selection process be reported and made part of the record, but it is within the broad range of professional conduct, and no basis for an ineffective assistance claim, if counsel does not do so in a non-

9

death penalty case. *Dunlap v. State*, 291 Ga. 51, 53 (727 SE2d 468) (2012). "[Brinkley's] speculation that error may have occurred is insufficient to show any deficiency on the part of counsel, or prejudice therefore, and is insufficient to show reversible error." Id. "Merely asserting a general unspecified hope of reversible error during voir dire is insufficient to warrant a new trial on the ground that a transcript of the proceeding should have been made so as to accommodate a search for error now buried in unrecorded history." *McFarlane v. State*, 291 Ga. 345, 346-347 (729 SE2d 349) (2012) (punctuation and citation omitted); *Primas v. State*, 231 Ga. App. 861 (501 SE2d 28) (1998). This claim of error is without merit.

5. Brinkley contends that the more than ten-year delay between his conviction in January 2000 and this appeal violated his right to due process.

"[S]ubstantial delays experienced during the criminal appellate process implicate due process rights." *Chatman v. Mancill*, 280 Ga. 253, 256 (626 SE2d 102) (2006). To assess claims involving appellate delay, we use an analysis based on the four speedy trial factors set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972) – "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Chatman*, 280 Ga. at 256 (punctuation and citation omitted).

In its order denying Brinkley's April 2010 amended motion for a new trial, the trial court found that there was an inordinate delay after Brinkley timely moved for a new trial in February 2000 which weighed in his favor; that the delay was caused by inaction by a succession of post-conviction lawyers which weighed in his favor; and that evidence showed Brinkley attempted to assert his right to an appeal during the delay which also weighed in his favor. The State does not dispute these findings. Nevertheless, the trial court concluded that, even though the first three factors weighed in Brinkley's favor, he failed to show that he was prejudiced by the delay, and that considering all the factors, the appellate delay did not violate Brinkley's due process rights.

> [T]he prejudice necessary to establish a due process violation based on post-conviction direct appeal delay is prejudice to the ability of the defendant to assert his arguments on appeal and, should it be established that the appeal was prejudiced, whether the delay prejudiced the defendant's defenses in the event of retrial or resentencing.

*Chatman*, 280 Ga. at 260. "[U]nlike in the speedy trial context, [prejudice] is not presumed but must be shown." *Payne v. State*, 289 Ga. 691, 693 (715 SE2d 104) (2011). "[A]ppellate delay is prejudicial when there is a reasonable probability that, but for the delay, the result of the appeal would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

11

*Chatman*, 280 Ga. at 260-261 (punctuation and citations omitted). Moreover, "there can be no prejudice in delaying a meritless appeal." *Simmons v. State*, 291 Ga. 664, 668 (732 SE2d 65) (2012) (punctuation and citation omitted).

Brinkley claims that the delay prejudiced his appeal because it deprived him of the ability to assert on appeal that he was not competent to stand trial in superior court. He argues it was apparent at the time of trial that, at age 15, he was not competent; that if his February 2000 motion for new trial had been timely heard when he was still age 15, defense counsel would have been able to assess his competency; and that the delay of over 10 years before a hearing on the motion deprived him of the opportunity to develop evidence of incompetency that he could have asserted on appeal. This argument essentially reasserts enumerations raised on appeal that the trial court and trial counsel erroneously failed to assess Brinkley's competency at the time of trial. As we held in divisions 2 and 3, supra: (1) there was nothing in the record which should reasonably have raised a doubt about Brinkley's competency and required the trial court to sua sponte assess competency; (2) trial counsel's failure to assess competency was not deficient performance; and (3) the fact that Brinkley was only 15 years old at the time of trial was not alone reason to mandate a competency

assessment. Because those enumerations of error have no merit, Brinkley demonstrated no prejudice resulting from appellate delay.

Brinkley claims that the delay prejudiced his appeal because it deprived him of the ability to recreate a record of jury selection and possibly show that some error in jury selection might have occurred. As set forth in division 4, supra, the enumerations on appeal underlying this claim are without merit, so Brinkley demonstrated no prejudice resulting from appellate delay.

Brinkley "failed to offer the specific evidence required to show that the delay has prejudiced his appeal or that the result of the appeal would have been different but for the delay." *Loadholt v. State*, 286 Ga. 402, 406 (687 SE2d 824) (2010). The trial court did not abuse its discretion in ruling that Brinkley showed no violation of his due process rights resulting from appellate delay. Id.

6. Brinkley claims that imposing a life sentence on him for an offense he committed at the age of 14 violates the cruel and unusual punishment clause of the Georgia Constitution. Ga. Const. of 1983, Art I, Sec. I, Par. XVII. This claim was waived for appellate review because it was not timely raised in the trial court. *Brinkley*, 291 Ga. at 196.

7. As to the charge that he kidnapped the male victim, Brinkley claims that the failure to give jury instructions which used the four-factor test for asportation established in *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), was reversible error.

Because Brinkley's acts occurred prior to the July 1, 2009 effective date of the amendment to the kidnapping statute at OCGA § 16-5-40 (b), the *Garza* asportation test applies retroactively. *Hammond v. State*, 289 Ga. 142, 143-144 (710 SE2d 124) (2011).

> We therefore must determine whether the failure to charge the jury according to the *Garza* rule on asportation was harmless or whether it constituted reversible error. [To do so, we apply] the highly probable test to nonconstitutional error in criminal cases, asking whether it is highly probable that the error did not contribute to the judgment.

Id. at 144 (punctuation and citations omitted). Applying this test, we find that the failure to instruct the jury to consider the asportation element of kidnapping using the *Garza* test was harmless because it is highly probable that this failure did not contribute to the judgment of guilt.

*Garza* sets out four factors to be considered to determine whether the asportation element of kidnapping has been satisfied:

14

(1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*Hammond*, 289 Ga. at 144. It is not required that all four factors be satisfied to establish that asportation has occurred. Id.

Here, the male and female victims were outside the house on the front porch when Brinkley pointed a gun at them and forced them inside the house to a bedroom where Brinkley robbed the male victim at gunpoint. Brinkley then forced the male and female victims from the bedroom to the living room of the house; then forced the male victim to a bedroom away from the female victim, and forced the female victim to the kitchen where her raped her. Even if the first factor was not satisfied because the duration of the movement was brief, we find that the remaining three factors were satisfied. The movement did not occur during the armed robbery and was not an inherent part of that offense. And the movement presented a significant danger to the victim because it enhanced Brinkley's control by moving the victim from a location open to public view on the front porch to an isolated position away from protection or rescue which increased the risk of injury in the event of attempted escape. *Jones v. State*, 290 Ga. 670, 671 (725 SE2d 236) (2012). Accordingly, the evidence was

15

sufficient under the *Garza* test to establish the element of asportation beyond a reasonable doubt.

8. On the offense of kidnapping with bodily injury, the indictment charged that Brinkley kidnapped the female victim and caused her bodily injury by raping her. Brinkley claims that, when the trial court instructed the jury on the charge of kidnapping with bodily injury, the court gave an erroneous charge which misled the jury to believe that proof of consensual sex with the victim was sufficient to establish the necessary element of bodily injury.

The trial court instructed the jury that the indictment charged that Brinkley kidnapped the female victim and caused her bodily injury by raping her. With respect to this charge, the trial court correctly instructed the jury as follows:

> I charge you that a person commits the offense of kidnapping with bodily injury when he abducts or steals away any person without lawful authority or warrant and holds such person against their will and the person kidnapped as a result of the kidnapping or during the kidnapping or arising out of the kidnapping, received bodily injury. I charge you that having carnal knowledge of a female, forcibly and against her will, constitutes as bodily injury. I charge you further that the State contends that this defendant committed the offense of kidnapping with bodily injury against [the female victim]. The injury which the State contends [the female victim] suffered was rape. In that connection, I charge you that a person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will. Carnal knowledge in rape

16

occurs when there is any penetration of the female sex organ by the male sex organ.

Immediately after giving the above instructions, the trial court gave the following instruction:

> If you find that the State has proven to you beyond a reasonable doubt that [the female victim] was kidnapped by the defendant, as I have previously defined that offense for you, and if you further find that the defendant had carnal knowledge of [the female victim] and that such carnal knowledge occurred during or arising out of, or was a result of a kidnapping of [the female victim], then you would be authorized to find the defendant guilty of kidnapping with bodily injury.

Brinkley argues that the latter instruction erroneously referred only to carnal knowledge of the female victim during the kidnapping without adding that, to constitute bodily injury by rape as alleged in the indictment, the carnal knowledge must also have been by force and against the victim's will. He contends that the instruction misled the jury to believe that consensual sex with the victim was sufficient to show the "bodily injury" necessary to find him guilty on the charge that he kidnapped the victim and caused bodily injury by raping her.

The trial court's latter instruction incorrectly failed to inform the jury that carnal knowledge of the victim must be with force and against the victim's will to constitute bodily injury by rape as alleged in the indictment. Nevertheless, "[i]t is a

fundamental rule of law that jury instructions must be viewed as a whole." *Felts v. State*, 244 Ga. 503, 504-505 (260 SE2d 887) (1979). Taking the jury instructions as a whole, and considering the jury's guilty verdict on the separate rape charge, we find that the incorrect portion of the instructions was harmless and did not mislead or confuse the jury as to the proof necessary to find Brinkley guilty on the charge of kidnapping with bodily injury.

Prior to giving the incorrect instruction, the trial court correctly instructed the jury that the State alleged rape as the bodily injury that occurred during the kidnapping, and "that a person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will." The trial court also instructed the jury that the State had the burden to prove each element of the charged crimes beyond a reasonable doubt. After the incorrect instruction, the trial court correctly repeated all the elements of rape in its instructions on the separate rape charge. Moreover, on the separate rape charge, the trial court instructed the jury that the defendant contended that the victim freely consented to sexual intercourse with him; that the State had the burden to show lack of consent; and that consent on the part of the alleged victim is fatal to a conviction for rape. After hearing all of these instructions, the jury found Brinkley guilty of both rape and kidnapping with bodily

injury (by rape). The guilty verdict on the rape charge demonstrates that the jury considered and rejected Brinkley's consent defense. Under these circumstances, it is clear that the incorrect instruction was simply a misstatement corrected by the remainder of the instructions. Because the trial court's instructions, taken as a whole, did not confuse or mislead the jury to believe that proof of consensual sex with the victim was sufficient to establish bodily injury on the charge of kidnapping with bodily injury, no reversal is required. *Williams v. State*, 267 Ga. 771, 774 (482 SE2d 288) (1997).

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*