**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 14, 2018**

# In the Court of Appeals of Georgia

A18A0422. MEDDINGS v. THE STATE.

RAY, Judge.

Following a jury trial, Richard Carlton Meddings, II, was convicted on four counts of child molestation and two counts of aggravated child molestation. He appeals from his convictions and the trial court's denial of his motion for new trial, contending that the trial court erred when it denied his motion to suppress his confessions. He also contends that the evidence was insufficient to support his convictions, that he had ineffective assistance of counsel, and that he was denied his rights to due process based on post-trial delay. For the reasons that follow, we affirm.

On appeal from his criminal conviction, Meddings is no longer presumed innocent and all of the evidence is viewed in the light most favorable to the jury's verdict. *Lipscomb v. State*, 315 Ga. App. 437, 439 (727 SE2d 221) (2012).

The evidence adduced at trial shows that in 2007, the 14-year-old victim, A. T., and other family members lived with Meddings in Houston County. Meddings was married to A. T.'s half-sister. A. T. testified at trial that, during this time, Meddings molested her on several occasions by touching her vaginal area with his hands, mouth, and penis, by touching her buttocks with his penis, and by having her place her hand and mouth on his penis. Although A. T. was initially afraid to tell anyone about the sexual abuse, she eventually made an outcry to her mother.

Following her outcry, a forensic interview of A. T. was conducted at the Rainbow House, a child advocacy center, wherein A. T. described Meddings' acts of sexual abuse. Later, a child abuse investigator with the Houston County Department of Family and Children Services and Corporal Hilton, a juvenile investigator with the Houston County Sheriff's Department, went to A. T.'s school to interview her. During this follow-up interview, A. T. described Meddings' acts of sexual abuse in great detail.

Following A. T.'s disclosure, A. T.'s half-sister became angry at A. T. and accused her of lying about the sexual abuse. Under pressure from her sister and other family members, A. T. was coerced into writing a letter recanting her allegations. At trial, however, A. T. confirmed that Meddings had indeed molested her and that her testimony about the acts of sexual abuse was the truth.

The evidence at trial further showed that on May 10, 2007, Meddings was interviewed twice by Corporal Hilton. In the first interview, which was video-recorded, Meddings denied any wrongdoing and agreed to go take a polygraph test. When he met with the polygraph examiner later that morning, however, Meddings confessed to his crimes during the pre-test interview. After admitting his guilt to the polygraph examiner, Meddings wrote out a statement summarizing his confession. The polygraph examiner then made a telephone call to Corporal Hill and faxed Meddings' written confession to her.

After leaving the polygraph examiner's office, Meddings met with Corporal Hilton again that same day for a second video-recorded interview, wherein he confirmed his written confession. Although Corporal Hilton was now aware of Meddings' confession, she did not place Meddings under arrest at that time. Rather, she allowed Meddings to leave to get his affairs in order before his arrest.

3

On May 15, 2007, Meddings turned himself in to Corporal Hilton to be placed under arrest. After being advised of his Miranda rights, Meddings participated in a third video-recorded interview, wherein he gave Corporal Hilton a more detailed confession regarding his crimes.

Meddings' oral and written confessions to the polygraph examiner and the video recordings of Meddings' oral confessions to Corporal Hilton were admitted into evidence at trial over Meddings' objection. After considering all of the evidence, including the testimony of the child-victim and the evidence of Meddings' confessions, the jury found Meddings guilty of all charges in the indictment. This appeal ensued.

1. Meddings first contends that the trial court erred in denying his motion to suppress his confessions. Specifically, he argues that his confessions were involuntary and inadmissible because they were induced by an improper promise of benefit. We disagree.

To render a confession admissible under Georgia law, "it must have been made voluntarily, without being induced by another by the slightest hope of benefit or

4

remotest fear of injury." See former OCGA § 24-3-50.[1] The statutory reference to "the slightest hope of benefit" refers to promises related to reduced criminal punishment such as "a shorter sentence, lesser charges, or no charges at all." (Citation and punctuation omitted.) *Finley v. State*, 298 Ga. 451, 454 (3) (782 SE2d 651) (2016). In determining whether an in-custody statement was made freely and voluntarily, a trial court must consider the "totality of the circumstances" and apply a "preponderance of the evidence" standard. (Citation omitted.) *Philpot v. State*, 300 Ga. 154, 158 (3) (794 SE2d 140) (2016). Further, "[b]ecause admissibility of such a statement presents a mixed question of fact and law, on appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous and independently apply the legal principles to the facts." (Citation and punctuation omitted.) Id.

At the hearing on the motion to suppress, Corporal Hilton testified that, on the morning of Meddings' scheduled polygraph examination, she did not pressure, threaten, or promise anything to Meddings, nor did she give him any kind of

[1] This case was tried in 2010 under the old Evidence Code. We note that a substantially identical statute is contained in the new Evidence Code under OCGA § 24-8-824, effective January 1, 2013. Accordingly, our analysis of this issue is the same under either version.

inducement to persuade him to talk to the polygraph examiner. Our review of the video-recording of this particular interview indicates that Corporal Hilton informed Meddings that "today is the only day that I can help you." However, to put her statement into context, we note that Corporal Hilton further explained to Meddings that she is part of a multi-disciplinary team which includes investigators, the district attorney, psychologists, child advocates, and others, and that the multi-disciplinary team meets monthly to discuss pending cases involving abused children. She also explained to Meddings that the district attorney may ask her for a recommendation at one of these meetings, and she informed Meddings that if he was open and honest with her, she could inform the district attorney of his cooperation and that she might not recommend the maximum punishment. Although Corporal Hilton indicated to Meddings that his cooperation could result in probation as a possible outcome, she further clarified that "I can't really say as far as this case [is concerned]," but that they do ask team members for recommendations.

Under the totality of the circumstances, we conclude that Corporal Hilton's statements did not amount to the type of "hope of benefit" that would render his subsequent confessions involuntary. "Merely telling a defendant that his or her cooperation will be made known to the prosecution does not constitute the hope of

6

benefit sufficient to render a statement inadmissible[.]" (Citations and punctuation omitted.) *Samuels v. State*, 288 Ga. 48, 50 (2) (701 SE2d 172) (2010). Further, merely presenting a defendant with the possibility of a better result in his case if he chooses to cooperate does not constitute an impermissible hope of benefit where the defendant is aware that any agreement with regard to possible punishment is ultimately up to others. *Shepard v. State*, 300 Ga. 167, 170 (2) (794 SE2d 121) (2016) (defendant's incriminating statements not induced by hope of benefit where the detectives merely acknowledged that the defendant could possibly get some deal and that they would talk with the district attorney, but it was clear to defendant that any agreement would require the assent of the district attorney); *Selley v. State*, 237 Ga. App. 47, 49 (3) (514 SE2d 706) (1999) (a detective did not offer an improper hope of benefit when he told defendant that "he would talk to the prosecutor and see if he could get [the defendant] a good deal if [he] cooperated"). Compare *Canty v. State*, 286 Ga. 608, 610 (690 SE2d 609) (2010) (defendant's confession was induced by hope of benefit when defendant was only told that confession could result in a "shorter term").

Furthermore, we find no merit in Meddings' contention that the polygraph examiner induced him to make his initial confessions by telling him that he would get probation if he confessed to his crimes. The polygraph examiner, Robert Warner, an

7

independent contractor who had been hired by the Houston County Sheriff's Office to administer Meddings' polygraph examination, testified at the hearing on the motion to suppress that he did not make any promises to Meddings or suggest to him that he would receive any particular benefit by confessing. Warner testified that he merely informed Meddings that he would make Meddings' cooperation known to Corporal Hilton. See *Samuels*, supra.

For the above reasons, the trial court did not err in denying the motion to suppress his confessions.

2. Meddings contends that the evidence was insufficient to support his convictions. We disagree.

When reviewing the sufficiency of the evidence,

> we view the evidence in a light favorable to the jury's verdict. Weighing the evidence and determining witness credibility are beyond the purview of this [C]ourt. We simply assess whether the evidence was sufficient to find [Meddings] guilty beyond a reasonable doubt.

(Citation and punctuation omitted.) *Atkins v. State*, 342 Ga. App. 849, 849 (805 SE2d 612) (2017). Based on all of the evidence, including A. T.'s direct testimony concerning Meddings' acts of sexual abuse, we conclude that the evidence was sufficient for a rational trier of fact to have found Meddings guilty beyond a

8

reasonable doubt of the crimes for which he was convicted. Id. See also *Smith v. State*, 320 Ga. App. 408, 410 (1) (a) (740 SE2d 174) (2013) ("The testimony of a victim of child molestation or aggravated child molestation need not be corroborated. The testimony of one witness is generally sufficient to establish a fact") (punctuation and footnotes omitted).

3. Meddings also contends that he received ineffective assistance of counsel because his trial counsel did not request any jury charges of his own and did not object to the trial court's failure to charge the jury as to the voluntariness of each of his confessions individually. His arguments are without merit.

To succeed on his ineffective assistance of counsel claim, Meddings "must show both that trial counsel's performance was deficient, and that the deficient performance prejudiced his defense." (Citation omitted.) *Anglin v. State*, 302 Ga. 333, 343 (8) (806 SE2d 573) (2017). When considering such a claim, we note that "there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance[.]" (Footnote omitted.) *Bynum v. State*, 315 Ga. App. 392, 394 (1) (a) (726 SE2d 428) (2012). Furthermore, "[d]ecisions as to which jury charges will be requested . . . fall within the realm of trial tactics and strategy. They provide no grounds for reversal unless such tactical decisions are so patently

unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *McLean v. State*, 297 Ga. 81, 84 (3) (772 SE2d 685) (2015).

(a) *Trial counsel's failure to submit any requests to charge, in general* – At the hearing on Meddings' motion for new trial, Meddings' trial counsel testified that he made the decision not to submit his own jury charge requests because he knew that "the [trial court] was going to [charge] a lot of the obvious," which he acknowledged were the "typical [and] standard criminal jury charges." He further testified that he would have submitted particular jury charge requests if he "thought tactically there was a reason" to do so. Having reviewed the trial court's charge to the jury in general, we conclude that trial counsel's tactical decision in this regard was not unreasonable. *McLean*, supra. See generally *Tenant v. State*, 218 Ga. App. 620, 623 (4) (e) (462 SE2d 783) (1995) (trial counsel's failure to request any jury charges did not constitute deficient performance where defendant failed to show that charges given were deficient or that the failure to request specific charges actually prejudiced the defense).

(b) *Trial counsel's decision to not object to trial court's failure to charge as to the voluntariness of each individual confession* – At trial, the trial court charged the jury only as to the voluntariness of Meddings' detailed confession that he made

10

to Corporal Hilton prior to his arrest on May 15, 2007. The trial court did not specifically charge the jury with regard to the voluntariness of the prior informal confessions that Meddings made to Warner and Corporal Hilton on May 10, 2007. Meddings contends that his trial counsel was ineffective because he did not object to the trial court's failure to also charge the jury as to the voluntariness of the prior confessions. His claim of ineffectiveness on this issue fails.

At the hearing on Meddings' motion for new trial, trial counsel testified that he considered the series of confessions as one "continuing confession," and that he wanted the jury to think of it that way as well. Trial counsel further testified that he did not want to draw the jury's attention to each individual confession, and that it actually benefitted the defense to have the jury view the series of statements as "one long and dubious confession" that had been undermined by his cross-examination of the prosecution witnesses. Specifically, trial counsel testified that he "wouldn't want the [c]ourt to emphasize that [the] jury ha[d] the right to believe any one or all . . . of these [confessions]," and that he was worried that if he brought attention to each confession individually, the jury would place a more heightened emphasis on the third, most-detailed confession.

We note that there is no legal necessity to give a jury charge on the voluntariness of a confession unless there is a specific request for one. See *Thorpe v. State*, 285 Ga. 604, 611 (7) (678 SE2d 913) (2009). Based on trial counsel's testimony, it is apparent that he made a conscious, strategic decision not to object to the trial court's failure to include each individual confession in its charge to the jury on voluntariness. As noted earlier, a trial counsel's reasonable decision as to which jury charges to request is a matter of trial tactics and strategy which cannot support a claim of ineffective assistance. See *McLean*, supra at 84 (3). We conclude that trial counsel's tactical decision in this regard was not unreasonable.

Furthermore, the issue of whether each individual confession was voluntary does nothing to undermine the corroborating testimony of the child-victim, A. T. As this was not a case in which Meddings' confessions were uncorroborated by any other evidence at trial, and in light of the fact that the voluntariness of the confessions was properly determined by the trial court on the motion to suppress, see Division 1, supra, Meddings cannot show that he was prejudiced as a result of trial counsel's decision not to object to the trial court's failure to charge on the voluntariness of each individual confession. See generally, *Thorpe*, supra at 611-612 (7).

12

For the above reasons, we conclude that Meddings' claim of ineffective assistance of counsel is without merit.

4. Lastly, Meddings argues that his due process rights were violated based on the nearly seven-year delay between his conviction and the trial court's hearing on his motion for new trial. He also argues that the trial court failed to adequately rule on this issue below. We discern no reversible error.

As an initial matter, we note that the trial court acknowledged the issue of post-trial delay in its order denying Meddings' motion for new trial. In its ruling, the trial court found that there had been an inordinate post-trial delay, but that any consequences of this delay should be left to the appellate court. We shall fully address this issue on appeal.

"While there is no Sixth Amendment right to a speedy appeal, due process concepts necessarily become implicated when substantial delays are experienced during the criminal appellate process." (Citation and punctuation omitted.) *Chatman v. Mancill*, 278 Ga. 488, 488, n. 2 (604 SE2d 154) (2004). And "[t]o assess claims involving appellate delay, we use an analysis based on . . . length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

13

(Citations and punctuation omitted.) *Brinkley v. State*, 320 Ga. App. 275, 280 (5) (739 SE2d 703) (2013).

In this case, the record shows that Meddings was convicted on July 2, 2010, and he timely filed a motion for new trial on July 23, 2010. The record shows that the trial court failed to keep track of the pending motion and that a hearing was never scheduled because the court reporter had not filed the trial transcript. Thereafter, Meddings filed pro se motions in 2011 and 2012 requesting a copy of the trial transcript, but the trial court denied both motions based on its mistaken belief that all of Meddings' post-trial proceedings had been concluded. Eventually, in 2017, the trial court discovered that Meddings' motion for new trial was still pending, and it contacted the court reporter to demand the filing of the trial transcript. After the trial transcript was filed, Meddings was appointed new counsel and filed an amended motion for new trial on May 16, 2017. Hearings on his motion for new trial were held on May 17, 2017, and June 9, 2017. The trial court entered its order denying the motion for new trial on July 21, 2017, and Meddings filed his notice of appeal on August 18, 2017.

In response to Meddings' appeal, the State correctly acknowledges (i) that the nearly seven-year delay between Meddings' conviction and the hearing on his motion

14

for new trial is presumptively prejudicial; (ii) that the delay was the result of inattention on the part of Meddings' initial appellate counsel, the State, and the trial court; and (iii) that Meddings had apparently asserted his right to a prompt disposition of his efforts to seek post-trial review of his convictions.

We note that the delay in addressing Meddings' motion for new trial is troubling. Therefore, we must again remind both the bench and bar that

> this sort of extraordinary post-conviction, pre-appeal delay puts at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial. It is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel . . . , to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay. That duty unfortunately was not fulfilled in this case.

(Footnote omitted.) *Robinson v. State*, 334 Ga. App. 646, 647 (1) (780 SE2d 86) (2015).

Nevertheless, Meddings has failed to show that his motion for new trial and subsequent appeal were prejudiced by the delay. "Appellate delay is prejudicial when there is a reasonable probability that, but for the delay, the result of the [motion for new trial or] appeal would have been different." (Citation and punctuation omitted.) *Shank v. State*, 290 Ga. 844, 849 (5) (c) (725 SE2d 246) (2012).

15

In his amended motion for new trial, Meddings asserted below that his trial counsel was ineffective, inter alia, because he had failed to call his father as a witness at the motion to suppress his confession and at trial. He contends that he was prejudiced by the post-trial delay because, by the time of the motion for new trial hearing, his father's memory had faded with regard to some of the events that occurred on the date of Meddings' initial confession to the polygraph examiner. However, our review of the hearing transcript indicates that his father was able to testify as to all of the facts about which he was being questioned, and Meddings has not shown how the purported failings of his father's memory substantially related to any material issue that could have supported his claim of ineffective assistance of counsel. See generally *Threatt v. State*, 282 Ga. App. 884, 890-891 (d) (640 SE2d 316) (2006) (no prejudice from post-trial delay where defendant had alleged that detective's memory concerning investigation had faded but defendant failed to show how those memory lapses substantially related to any material issue supporting his defense). Accordingly, Meddings has failed to show a reasonable probability that the outcome of his motion for new trial or this appeal would have been different but for the delay.

16

Moreover, "there can be no prejudice in delaying a meritless [motion for new trial or] appeal." (Citation and punctuation omitted.) *Brinkley*, supra at 281 (5). Accord *Loadholt v. State*, 286 Ga. 402, 406 (4) (687 SE2d 824) (2010) (holding that there can be no prejudice in a delay pending appeal where the enumerations raised on appeal are without merit).

Based on the foregoing, including our holdings in Divisions 1 through 3 of this opinion, Meddings cannot establish that he was prejudiced by the post-trial delay. Accordingly, his claim with regard to this issue must fail.

*Judgment affirmed. McFadden, P.J., and Rickman, J., concur.*

17