**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**October 7, 2020**

# In the Court of Appeals of Georgia

A20A1498. MCCULLOUCH v. THE STATE.

MILLER, Presiding Judge.

Kenny Lynn McCulloch[1] seeks review after a jury found him guilty of twenty counts of second-degree burglary. On appeal, he argues that (1) the trial court erred in failing to instruct the court reporter to transcribe the entire voir dire of the jury; (2) the trial court erred in denying his motion for a directed verdict because the evidence was insufficient to sustain his convictions; (3) the trial court erroneously admitted video evidence; and (4) the trial court plainly erred when it failed to render a specific sentence and instead directed the State to prepare the details of the sentence. Upon a close review of the record, we reverse McCulloch's conviction for Count 6 of the

---

[1] The record is inconsistent as to whether the defendant's last name is spelled "McCullouch" or "McCulloch." We will use "McCulloch" in this opinion since that is how the defendant's name is spelled in his appellate brief.

indictment because the proof at trial did not match the victim alleged in the indictment, but we discern no error on any of the remaining issues and otherwise affirm McCulloch's convictions and sentences.

Viewed in the light most favorable to the jury's verdicts,[2] the record adduced at trial shows that James Anderson owned Mack Smith Mini Storage, a self-storage facility in Rossville, Georgia. On the morning of December 26, 2017, James Anderson noticed that a door on one of the storage units was open. He also observed a man with a female passenger driving a truck with a "dingy red color" and a different color hood. The truck was loaded with so many items that James Anderson "figured somebody was moving out." While James Anderson continued his check of the property, he noticed that more of the storage units had their locks removed. James Anderson checked inside one of the units with a missing lock and noticed that the items were "just scrambled around inside." He called his daughter and manager of the business, Kristie Anderson. Kristie Anderson and another employee came to Mack Smith Mini Storage to assess the damage. The three contacted the county sheriff's office and all of the renters that had missing or broken locks on their unit doors. The employees noticed that 20 storage units had their locks broken.

_____

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Kristie Anderson and the responding officer reviewed the security camera footage from the morning and the night before. The footage showed a red pickup truck with a black hood and a black tailgate making multiple trips to the storage facility on the night of December 25, 2017, and the morning of December 26, 2017, each time exiting the premises with a truck bed loaded with items.[3] According to Kristie Anderson, there was no single storage unit on the premises capable of holding the amount of property seen taken from Mack Smith Mini Storage, and it was not normal for someone to enter and exit the property numerous times unless they were moving into or out of a unit.

Law enforcement's investigation of the burglary led them to the home of Mickey Croft. Croft considered McCulloch to be a good friend, and he had allowed McCulloch and his girlfriend, Whitney Yarber, to stay in his backyard shed. According to Croft, McCulloch owned a red truck and had painted parts of it black. One day after Christmas 2017, McCulloch came to Croft's house with a trailer full of items. When Croft gave law enforcement permission to search the property, they saw many items of property laying in the yard and a truck that matched the description of the vehicle seen in the surveillance footage. Law enforcement

---

[3] The surveillance footage was played for the jury.

recovered most of the stolen property from the house, and they observed a lanyard and phone receipt with Yarber's name on it among the stolen property. Neither Yarber nor McCulloch had signed an agreement with Mack Smith Mini Storage to store their property on the premises.

A grand jury indicted McCulloch on 20 counts of second-degree burglary (OCGA § 16-7-1 (c)). At trial, the jury found McCulloch guilty of all counts. The trial court sentenced McCulloch to a total of 20 years, consisting of eight years' imprisonment and 12 years' probation, and it imposed a total of $2,340 in restitution to one of the victims. McColloch filed a motion for new trial. Following a hearing, the trial court denied McCullouch's motion for new trial. This appeal followed.

1. McCullouch first argues that the trial court erred in failing to instruct the court reporter to transcribe the entire voir dire as required by OCGA § 17-8-5. This argument is foreclosed by precedent.

OCGA § 17-8-5 (a) provides that "[o]n the trial of all felonies the presiding judge shall have the testimony taken down and, when directed by the judge, the court reporter shall exactly and truly record or take stenographic notes of the testimony and proceedings in the case, except the argument of counsel." Our Supreme Court has interpreted this provision to mean that, although objections and rulings thereon made

4

during jury selection are required to be reported and made part of the trial record, there is no requirement that the entire jury selection be reported and made part of the record in a nondeath penalty felony case because the jury voir dire is not part of the "proceedings in the case." *State v. Graham*, 246 Ga. 341, 342 (271 SE2d 627) (1980).

Here, the trial court included the objections made during voir dire in the trial transcript, and it appears that McCulloch did not make any special request to have the entire voir dire transcribed under OCGA § 5-6-41 (j). Under our precedent, there was no requirement that the trial court transcribe the remainder of voir dire. See *Graham*, supra, 246 Ga. at 342; *Brinkley v. State*, 320 Ga. App. 275, 280 (4) (739 SE2d 703) (2013) (rejecting claim that defendant's constitutional rights were violated because the entire jury selection process was not reported and transcribed as part of the trial record). McCulloch's claim that he could not properly prepare for the appeal without the voir dire transcript is also without merit. See *Brinkley*, supra, 320 Ga. App. at 280 (4) ("Merely asserting a general unspecified hope of reversible error during voir dire is insufficient to warrant a new trial on the ground that a transcript of the proceeding should have been made so as to accommodate a search for error now buried in unrecorded history.") (citations omitted); *Primas v. State*, 231 Ga. App. 861 (501 SE2d 28) (1998) ("[The defendant's] claim that he is unable to prepare an appeal

5

without a complete transcript that includes the voir dire also fails under *Graham*.").[4] Accordingly, we reject this enumeration of error.

2. In three related enumerations of error, McCulloch next argues that the evidence was insufficient to support all of his convictions and that the trial court erred in denying his motion for a directed verdict on 13 of the counts based on evidence insufficiency. He argues that, for 13 counts, the State failed to prove that he had illegally entered the storage units or had the intent to take items without permission because the victims underlying these counts did not testify at trial and because there was no evidence otherwise showing that he did not have permission to enter those units. He further argues that the State failed to provide sufficient evidence to identify him as the driver of the truck that was shown on the video footage and that the State failed to exclude the reasonable hypothesis that Croft's nephew, Calvin Pittman, was the actual perpetrator. For the following reasons, we agree with McCulloch that the

---

[4]As *Graham* is direct and binding precedent from the Supreme Court of Georgia on this issue, we cannot entertain McCulloch's argument that it should be overruled. See *Etkind v. Suarez*, 234 Ga. App. 108 (505 SE2d 831) (1998) ("[T]his court has no authority to overrule or modify a decision of the Supreme Court of Georgia as the decisions of the Supreme Court of Georgia shall bind all other courts as precedents.") (citations and punctuation omitted).

evidence was insufficient to support Count 6 of the indictment, but we conclude that

the evidence was sufficient to support all of the 19 remaining counts of conviction.

> [T]he standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. When reviewing the sufficiency of the evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citation omitted.) *Smith v. State*, 350 Ga. App. 496, 497 (829 SE2d 776) (2019). In

addition,

> [a] conviction may be based upon circumstantial evidence if the proved facts are not only consistent with the hypothesis of guilt, but exclude every other reasonable hypothesis but the guilt of the accused. OCGA § 24-4-6. When the evidence meets this test, circumstantial evidence is as probative as direct evidence, and whether this burden has been met is a question for the jury. When the jury is authorized to find that the evidence, though circumstantial, excluded every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed unless the verdict is insupportable as a matter of law. Further, while circumstantial evidence must exclude every other *reasonable* hypothesis but the

defendant's guilt, the evidence need not exclude every inference or hypothesis.

(Citation omitted.) *Johnson v. State*, 291 Ga. App. 253, 254 (661 SE2d 642) (2008).

"A person commits the offense of burglary in the second degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant building [or] structure[.]" OCGA § 16-7-1 (c).

First, as to McCulloch's argument that the State did not present sufficient evidence to identify him as one of the perpetrators, we note that the State presented evidence that McCulloch owned a distinctive red truck with a black hood, which Anderson identified as the truck he saw visiting Mack Smith Mini Storage. The State also presented evidence that McCulloch stayed in a shed on Croft's property and that the police discovered the stolen property in and around the shed. Some of the victims also discovered receipts and identification belonging to McCulloch or his girlfriend Yarber within their recovered property. A law enforcement officer testified that, in his opinion, the truck driver visible on the surveillance footage resembled McCulloch. Finally, the surveillance footage was played for the jury, and so the jury had the opportunity to view for themselves whether McCulloch matched with the images of

8

the perpetrator depicted in the video. The jury was authorized to find from this circumstantial evidence that every reasonable hypothesis was excluded except that McCulloch was the male perpetrator. See *Smith v. State*, 309 Ga. App. 466, 468-469 (710 SE2d 654) (2011) (circumstantial evidence was sufficient to support burglary conviction where, in part, defendant had driven a van to store and packs of cigarettes were found in, around, and under van shortly after the store was burglarized and cigarettes were stolen).

We also conclude that the State presented sufficient evidence to show that McCulloch lacked authority to enter the burglarized storage units and that he had entered with the intent to commit theft. "The State may prove lack of authority to enter with circumstantial evidence." (Citations omitted.) *Harris v. State*, 322 Ga. App. 122, 124 (1) (744 SE2d 211) (2013). The State presented evidence that each of the 20 burglarized units had their locks cut, broken, and/or removed and that neither Yarber nor McCulloch had signed an agreement with Mack Smith Mini Storage to store their property on the premises. These facts were sufficient to show that McCulloch lacked the authority to enter these storage units. See id. (evidence that the defendant entered a school by smashing a window, that defendant was not an employee or parent of a student at the school, and that the defendant fled was

9

sufficient to show defendant's lack of authority to enter the school); *Lloyd v. State*, 168 Ga. App. 5 (308 SE2d 25) (1983) (evidence that a door had been pried open was sufficient to show defendant's lack of authority to enter a building). Additionally, "an inference of intent to steal is raised where evidence shows an unlawful entry into a building where valuable goods are stored inside and no other motive is apparent," and a jury is authorized to "infer an intent to steal based on the evidence of an unlawful entry into a building housing an operating business." (Citations omitted.) *Harris*, supra, 322 at 124-125 (2). Such is the case here.[5]

We agree with McCulloch, however, that the State failed to introduce evidence sufficient to sustain his conviction on Count 6 — as that charge was alleged in the indictment. The indictment alleged in Count 6 that McCulloch broke into a storage unit leased to Steven Wesley Schild. The State instead presented testimony and a lease agreement showing that the unit in question belonged to Bethany Schild. The State did not present any evidence at trial showing that Steven Schild was in some way related to Bethany Schild or that Steven Schild was ever involved with Mack

---

[5] McCulloch also challenges his conviction on Count 5 on the grounds that the victim, Brenda Rush, testified that she could not say for certain whether anything had been stolen, but "[b]urglary does not require a completed theft, but merely the intent to commit a theft." (Citation omitted.) *Sermons v. State*, 294 Ga. App. 293, 294 (669 SE2d 210) (2008).

Smith Mini Storage or leased a unit that was unlawfully entered. Without any evidence presented as to Steven Schild's possible relationship to the incident, the State cannot rely on the evidence as to the burglary of Bethany Schild's unit to support this conviction because "[i]f the victim named in the indictment and proven at trial are two different people, then a fatal variance has occurred[.]" *Clark v. State*, 278 Ga. App. 412, 414 (1) (629 SE2d 103) (2006) (physical precedent only); see also *Harrison v. State*, 192 Ga. App. 690 (385 SE2d 774) (1989) (conviction for robbery reversed where the evidence at trial showed that the victim was a different person than the victim alleged in the indictment). Accordingly, we conclude that the State failed to carry its burden to support Count 6.

We therefore reverse McCulloch's conviction on Count 6 of the indictment, but we conclude that the evidence was sufficient to support each of the 19 remaining counts of conviction, and so the trial court did not err in denying McCulloch's motion for a directed verdict and motion for new trial on these counts.

3. McCulloch next argues that the trial court erroneously admitted the storage facility's surveillance camera footage as evidence because it was not properly authenticated under OCGA § 24-9-923 (c). He specifically argues that the copy of the video footage shown to the jury did not have any time and date stamps as required by

11

the statute. We conclude that the trial court did not abuse its discretion in admitting the video footage.

"We review the trial court's decision to admit evidence for an abuse of discretion." (Citation omitted.) *Moore v. State*, 305 Ga. 251, 253-254 (2) (824 SE2d 377) (2019).

> Subject to any other valid objection, photographs, motion pictures, video recordings, and audio recordings produced at a time when the device producing the items was not being operated by an individual person or was not under the personal control or in the presence of an individual operator shall be admissible in evidence when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered, provided that, prior to the admission of such evidence, the date and time of such photograph, motion picture, or video recording shall be contained on such evidence, and such date and time shall be shown to have been made contemporaneously with the events depicted in such photograph, motion picture, or video recording.

OCGA § 24-9-923 (c). "[W]here a video or photograph lacks accurate date and time stamps, its admission may nonetheless be proper upon additional corroboration." (Citation omitted.) *Dillon v. Reid*, 312 Ga. App. 34, 42 (6) (717 SE2d 542) (2011) (interpreting an identical precursor statute).

12

Here, Kristie Anderson testified that she runs Mack Smith Mini Storage's office and that the camera system installed at Mack Smith Mini Storage operates continuously and was in good working order on December 25 and 26, 2017. She testified that law enforcement helped her transfer the videos from her proprietary system onto a flash drive. A law enforcement officer observed the videos play on the machine located in Ms. Anderson's office and noted that the videos showed a proper time and date when viewed on the proprietary system. The officer testified that the video footage shown to the jury was identical to the footage that he observed in the Mack Smith Mini Storage office. Kristie Anderson also testified that the video exhibits shown to the jury were fair, unaltered videos that accurately displayed what she observed play on the video system located in her business office. The State further represented at trial that the defense had a full opportunity before trial to view the videos with the correct time and date stamps as shown on Mack Smith Mini Storage's proprietary system. Given this foundation, we conclude that the trial court did not abuse its discretion in allowing the video exhibits into evidence. See *Parks v. State*, 294 Ga. App. 646, 652 (10) (669 SE2d 684) (2008) (trial court did not abuse its discretion when admitting still photographs under OCGA § 24-9-923 (c)'s identical precursor statute, despite the fact that the time and date stamp was

13

inaccurate, when a witness testified that the pictures were taken from the videotapes recorded by the surveillance cameras, and the witness testified about how the cameras were set up, the recording procedure, how often the tapes were changed, that the cameras were working properly, the procedure for printing the still pictures from the videotape, and the accuracy of the date stamp on the tapes); see also *Dillon*, supra, 312 Ga. App. at 43 (6) ("The absence of a contemporaneous date and time on the photographs themselves would go to the weight, not the admissibility, of the evidence.") (citation and punctuation omitted).

4. McCulloch finally argues that the trial court erred when it failed to give a determinate sentence on each count at trial and instead directed the State to prepare the details of the sentence. We disagree.

First, we note that, although McCulloch did not object to his sentence in the trial court on these grounds, the issue is nevertheless preserved for our review because "Georgia law recognizes that a sentence which is not allowed by law is void and its illegality may not be waived." (Citation and punctuation omitted.) *Philmore v. State*, 300 Ga. 558 (796 SE2d 652) (2017).

Under OCGA § 17-10-1 (a) (1) (A),

Except in cases in which life imprisonment, life without parole, or the death penalty may be imposed, upon a verdict or plea of guilty in any case involving a misdemeanor or felony, and after a presentence hearing, the judge fixing the sentence shall prescribe a determinate sentence for a specific number of months or years which shall be within the minimum and maximum sentences prescribed by law as the punishment for the crime.

"The rule has been laid down by the Supreme Court, and applied by this court, that sentences for criminal offenses should be certain, definite, and free from ambiguity; and, where the contrary is the case, the benefit of the doubt should be given to the accused." (Citation and punctuation omitted.) *Dilas v. State*, 159 Ga. App. 39, 40 (1) (282 SE2d 690) (1981).

In this case, the trial court announced the following at sentencing:

THE COURT: All right. Mr. McCulloch, in essence you've been convicted of twenty counts of second degree burglary. I'm going to sentence you to serve a period of twenty years, however after eight service in the Department of Corrections I will allow you to serve the remainder on probation. . . . And, [prosecution], I want you to draw these sentences for me. I'm not going to go through counts.

THE STATE: Yes, ma'am. So that the aggregate comes out to comply with the Court's sentence.

15

THE COURT: Aggregate, but I want the – I want you to lay out these sentences specifically on those counts where the victims came to court in case the other counts are problematical.

THE STATE: And then run the other ones concurrent?

THE COURT: Yes. In case the other counts are problematical.

THE STATE: Yes, ma'am.

It is true that we require trial courts to enter discrete sentences as to each count of a multi-count indictment. See *Evans v. State*, 300 Ga. 271, 276 (794 SE2d 40) (2016) ("[A]s to sentencing, each count stands alone[.]"). Indeed, "[w]hen a trial court fails to impose separate sentences for each count of which a defendant was found guilty, it has not entered a proper judgment." *State v. Riggs*, 301 Ga. 63, 65 (1) (799 SE2d 770) (2017); see also *Keller v. State*, 275 Ga. 680, 681 (571 SE2d 806) (2002) ("[W]hen multiple counts of an indictment are tried together and the trial court does not enter a written sentence on one or more of the counts, the case is still pending in the trial court and is not a final judgment under OCGA § 5-6-34 (a) (1).").

Our law is equally clear, however, that "[t]he written sentence, not the oral declaration of the sentence, is the sentence of the court." (Citation omitted). *Jenkins v. State*, 246 Ga. App. 38 (4) (539 SE2d 542) (2000). The trial court in this case entered a written sentence and judgment the same day as the end of the trial when it announced its oral sentence, and the trial court's written sentence contained a definite and determinate sentence as to each count. "As no evidence shows that [McCulloch] started serving the sentence before the written sentence was entered, there is no error." Id.

Finally, we reject McCulloch's argument that the fact that the trial court had the State draft the sentencing sheet somehow rendered the sentence improper. Upon a review of the trial court's oral pronouncement, we determine that the trial court did not give any discretion to the State to make any material determinations as to the length of McCulloch's sentences. Moreover, the trial court signed off on the written sentencing order, so even if the State may have drafted the order, it still represents the order of the trial court, not the order of the State.[6] McCulloch has not offered

---

[6] To the extent that there are discrepancies between the trial court's oral pronouncement of sentence and the written sentencing order, we again note that "the written sentence controls over the trial court's oral pronouncements regarding sentencing." (Citation omitted.) *Grant v. State*, 195 Ga. App. 463, 464 (2) (393 SE2d 737) (1990).

17

anything beyond mere speculation to show that having the State draft the final sentence sheet in this case caused him harm or prejudice. Thus, we conclude that the trial court did not err when it sentenced McCulloch.

For these reasons, we therefore reverse McCulloch's conviction and sentence on Count 6 and affirm his remaining convictions and sentences.

*Judgment affirmed in part and reversed in part. Mercier and Coomer, JJ., concur.*